**In re OSOFSKY et al.**

No. 48597.

District Court, S. D. New York.

May 27, 1931.

Krause & Hirsch, of New York City (Sydney Krause and George C. Levin, both of New York City, of counsel), for trustee, petitioners for allowances.

Tischler & Gottesman, of New York City (Jacob F. Gottesman, of New York City, of counsel), for petitioning creditors.

David Haar, of New York City, for bankrupt.

WOOLSEY, District Judge.

I grant an increased allowance to the attorneys for the trustee, for the reasons and in the amount hereinafter mentioned.

I. When this case was first submitted to me, although an oral argument was requested, I disregarded the request and wrote a short memorandum on the back of the papers confirming the report, although it seemed to me that the allowance to Messrs. Krause & Hirsch, as attorneys for the trustee, was possibly on the low side.

After my memorandum confirming the report was filed, however, a member of the firm of Krause & Hirsch, attorneys for the trustee, called on me and explained the reason why his firm had asked for an oral argument, and requested me to allow a reargument.

After sending to the clerk's office for the papers, and considering the matter again, I granted the reargument, and summoned thereon the attorneys for the trustee, the attorneys for the petitioning creditors, and the attorney for the bankrupt.

II. I am informed that this proceeding started without any assets and with claims amounting to $13,155.38. The estate has received in all $4,509.53.

Of this sum $4,500, was the result of a settlement of a suit in equity begun in pursuance of the provisions of sections 67 (e) and 70 (e) of the Bankruptcy Act, against Abe Osofsky, Harry Weisbord, Rose Serotta, and Anderson & Tarlow, to set aside a fraudulent transfer.

This suit was brought on behalf of the trustee by Messrs. Krause & Hirsch. During the course of the trial before Judge Goddard, an offer of settlement for $4,500 was made by the defendants. This offer was tentatively accepted, subject to the approval of creditors, and later was finally accepted at a special meeting of the creditors, and thereafter the amount of the settlement was paid.

The result of this suit not only brought to the estate $4,500, but as the settlement involved the waiver of an alleged claim of $2,800 by Messrs. Anderson & Tarlow against the estate, it decreased the claims against the estate by that amount.

By the further efforts of the attorneys for the trustee, $4,537.63 of the claims against the estate, including this claim of Messrs. Anderson & Tarlow, have been expunged, and the total claims have been reduced, substantially by one-third, from $13,155.38 to $8,617.75.

III. In dealing with allowances, the referee gave an adequate allowance to Messrs. Tischler & Gottesman, the attorneys for the petitioning creditors, but when he came to make his allowance to Messrs. Krause & Hirsch he gave them an amount which, on reflection, I consider quite inadequate, and, in fixing this allowance, he made a statement which, by implication at least, reflects on the initiative of Messrs. Krause & Hirsch in a way which was not justified by any circumstances shown by the papers in this proceeding or in the suit in equity above mentioned, and which was quite astonishing to me in view of their reputation for competence, activity, and diligence in caring for the interests of their clients. It has, therefore, seemed to me appropriate in justice to them to reconsider this matter, and this reconsideration has given me a long-awaited opportunity, using this case as a text, to deal in general with the question of allowances in bankruptcy matters.

IV. In approaching the question of allowances in bankruptcy the court has, of course, to consider the situation with which the receiver and trustee find themselves faced at the outset of the proceeding, and then look at the net result which has come out of that situation.

In a case, which starts without assets, any substantial estate must almost always, to a large extent, be attributable to the efforts of the attorneys involved.

It is, of course, impracticable, if not impossible, accurately to allocate the exact contribution which each set of attorneys may make to such result. Consequently the court has often to consider, I think, what would be the proper aggregate allowance for legal fees in the proceeding, and then divide that amount as fairly as may be between the firms involved.

Here, however, the only question before me is the allowance to the attorneys for the trustee.

V. At the beginning this was a case with upwards of $13,000 of claims, and without any assets.

Due to the efforts of these attorneys, this estate is now an estate with assets, after proper disbursements by the trustee, of $4,414.89, and with aggregate claims of only $8,663.36.

VI. The elements to be considered in determining an attorney's fee were once most aptly summarized in evidence given on a refernce by Honorable William G. Choate, formerly a judge of this court, and David B. Ogden, Esq., a well known lawyer of a generation ago.

They laid down the following elements as being matters properly to be considered when the fees of an attorney have not been agreed on beforehand, but are to be fixed: (1) The time which has fairly and properly to be used in dealing with the case; because this represents the amount of work necessary. (2) The quality of skill which the situation facing the attorney demanded. (3) The skill employed in meeting that situation. (4) The amount involved; because that determines the risk of the client and the commensurate responsibility of the lawyer. (5) The result of the case, because that determines the real benefit to the client. (6) The eminence of the lawyer at the bar, or in the specialty in which he may be practicing.

Each case, of course, differs to some extent from every other case in respect of the importance of these several elements.

In some cases the time element is dominant; in others the skill used seems specially to stand out; and in others still, the amount which a defendant has been saved, or which a plaintiff has recovered, may be the dominating consideration in the charge. But if all these elements are considered together, and the relative importance of each element is fairly weighed by an attorney, it is possible to arrive at a proper charge in almost any case without much difficulty.

For many years, in my own practice, I used these elements in determining fees, and I have found that by using them it was possible so to rationalize the basis of charges as seldom to have disputes with any but the most unreasonable clients.

In bankruptcy cases, however, there seems to me to be another element which has to be considered. That is the fact that in bankruptcy very often futile quests for assets have to be made. Many times, however much ingenuity and time attorneys may expend, they may not be able to get anything for the estate by their efforts. It is then a question, as in salvage at sea, of no cure, no pay.

When the efforts of attorneys cause a material increase in the bankruptcy estate, or, as here, create it, they should be well rewarded; otherwise there will not be any incentive to attorneys to put forth their best efforts in cases which appear unpromising.

Indeed the situation may very well be compared, as I have just hinted, to salvage at sea.

In salvage cases courts have wisely come to think that, as a matter of public policy, it is necessary to give such adequate reward to a successful salvor as will make others to whom salvage situations are presented interested in attempting salvage operations. There must always be a flavor of generosity in the awards to success in order that an appetite for effort may be stimulated.

This attitude involves a wise public policy and is as beneficial to shipowners, cargo owners, and underwriters in admiralty law as a similar attitude is to creditors in bankruptcy proceedings.

VII. If one approaches a case like this, in the light of these reflections and with all the elements of charges which I have above laid down in mind, it is perfectly clear, I think, that, when the claims have been so much reduced and the assets so greatly increased by the efforts of the trustee's attorneys, a generous allowance to them is indicated.

VIII. As the referee has left this matter in his report, he has suggested a 32 per cent. dividend to the general creditors.

On the total claims allowed of $8,663.36, a 1 per cent. dividend to the general creditors would amount to $86.63. I hold that the dividend to the general creditors here should be decreased from 32 per cent. to 27 per cent. in order that the attorneys for the trustee may be adequately paid. This reduction would, therefore, mean a total reduction in dividends of five times $86.63, which would amount to $433.15.

The referee has already allowed Messrs. Krause & Hirsch, as attorneys for the trustee, the sum of $643.48. I hereby allow them the additional sum of $433.15, which, together with what the referee has already allowed, will make the total of their allowance $1,076.63, to which, of course, should be add-

ed their disbursements as allowed in the sum of $46.79.

IX. The attorneys for the petitioning creditors, Messrs. Tischler & Gottesman, have had an adequate allowance of $400 given to them by the referee. If they have any disbursements, they are entitled to have them added to the allowance.

It will thus be seen that this makes an aggregate allowance for legal fees and disbursements to Messrs. Tischler & Gottesman and Messrs. Krause & Hirsch of $1,476.63.

This is a little less than 33⅓ per cent. of the amount involved in a case where their joint activities in a no asset case were of the greatest value to creditors. I think that if this amount is judged in the light of the elements for charges in bankruptcy which I have mentioned above, it will be found to have been justified as an aggregate allowance to the two active sets of attorneys for their legal services in this case.

Furthermore, it is to be remembered that the fee which I am allowing to Messrs. Krause & Hirsch on the increased basis is less than 25 per cent. of the amount which they recovered for the estate in the equity proceeding, and less than 12 per cent. of the amount by which they benefited the estate, as is shown, when the $4,500 which they recovered is added to the amount of the claims which they succeeded in getting expunged; namely $4,537.63.

X. Consequently the referee's report herein must be modified in accordance with this opinion, by giving the general creditors a dividend of 27 per cent. instead of 32 per cent., and an allowance to Messrs. Krause & Hirsch, as attorneys for the trustee, for their fee, the sum of $1,076.63, plus disbursements in the sum of $46.79; making a total allowance for their fees and disbursements of $1,123.42.

In other respects the referee's report is confirmed, and the other recommendations thereof are approved.

Settle order on two days' notice.