**ROTH et al. v. REICH.**
**No. 24, Docket 20654.**

Circuit Court of Appeals, Second Circuit.

Nov. 7, 1947.

---

Ernest Reich, pro se.

Morton Roth, pro se.

Max Schwartz, pro se.

John P. Chandler, pro se.

Before L. HAND, SWAN and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is from three orders, affirming three orders of a referee in bankruptcy in a composition under Chapter XI, 11 U.S.C.A. § 701 et seq. The first two orders of the referee allowed the claims of two creditors, Morton Roth and John P. Chandler, for legal services performed by them for Reich, the Debtor, in an action in the New York Supreme Court; and the third made an allowance to Schwartz, as attorney for the Debtor in this proceeding. We take up each of the claims separately.

The Claim of Roth.

Roth's claim arose in the following manner. Gross and Blumberg, attorneys in New Jersey, on July 14, 1941, entered into a written retainer with the Debtor, Reich, by which they agreed to prosecute "any and all claims, as holder of patent rights or otherwise, which he may have against the Griswold Manufacturing Company." These claims arose out of past transactions between Reich and that company which went back over a number of years. Reich

agreed to pay by a contingent fee, made up, 50% on the first $10,000 recovered, and 33⅓% on any further recovery. He was to pay the cost beyond $100 of any accountant or patent counsel, both of whom were contemplated as possibly necessary, and all other expenses; but the expenses and the $100 just mentioned were to be deducted from any recovery in computing the fee. Gross and Blumberg retained Roth, the present appellee, to conduct the litigation, and for the purposes of these appeals we shall consider him as a substitute for them. He brought an action against the Griswold Company in the New York court in eight counts, of which the fifth, sixth, seventh and eighth may be disregarded. The first count was for $522.19, a net balance claimed upon a long account of transactions between Reich and the Griswold Company, covering the years 1932 to 1939, which it is not necessary to describe in detail. At the close of the evidence Roth consented to a dismissal of this count and his fee was not computed upon it; it comes into the appeal in a way which will appear. The second, third and fourth counts were upon several license contracts between Reich and the Griswold Company, the substantial question being whether these covered certain articles manufactured and sold by the licensee. The action finally came to trial after three preliminary appeals to the Appellate Division, and resulted in a judgment for Reich for $22,-640.37, which the Appellate Division affirmed and which the Court of Appeals refused to review. It was upon this amount that Roth computed his claim and that the referee allowed it, after the deduction of $1927.36 for disbursements. He liquidated the claim at $7,821.11 to which he added unpaid disbursements of $549.73, making $8,370.84 in all.

Upon this appeal Reich raises four objections to this allowance: (1) he says that Roth rejected an offer of settlement of much more than $22,000; (2) that by consenting to the nonsuit of the first count Roth "withdrew" from the litigation and forfeited the right to anything more than the $750 received at the time of his retainer; (3) that Roth was negligent in preparing and trying the first count; (4)

that Schwartz's allowance should have been deducted from the recovery in computing the contingent fee. The first objection was not made at the hearings before the referee, or until the case had been closed and was awaiting decision; Reich made it in a memorandum submitted to the referee in June, 1946, and it had no basis in the evidence taken so far. The referee appears, however, to have treated it as an issue to be decided and to have accepted a letter of Roth as an answer to Reich's memorandum. Strictly speaking, it is before us only upon those two documents, which do not support the objection. However, since the evidence is for the most part in the form of letters exchanged between Roth and the attorneys for the Griswold Company, and between Reich and an earlier attorney of his own, and since, so far as it is not, Reich has not denied Roth's statement, we are in a position to decide the question on the merits; and so we shall do in spite of Reich's failure to present it in season.

Roth's version is as follows. On November 20, 1942, the Griswold attorneys wrote him refusing to offer more than $30,000 to settle the action, that sum to include also a license during the remaining life of all Reich's patents. After a telephone talk between Roth and these attorneys on December 4th, they wrote Roth again on that day, refusing any terms whatever which did not include a license upon all Reich's patents; but suggesting that it "might be possible to persuade the Griswold Company to agree on a $35,000 figure." This Roth received on the 7th, and, as he had meanwhile got Reich's assent to accept $35,000, he so told the attorneys; but, when they transmitted this offer to the Griswold Company, it refused to accept, and made a counter proposal of $25,000 on December 10th. This offer Roth in turn transmitted to Reich, who was willing to accept it; but the Griswold Company had meanwhile changed its attorneys, and when Roth offered to the new ones to settle for $25,000 they refused on December 28th, and made a counter offer of $15,000, which was unsatisfactory.

Reich in his reply brief relies upon correspondence between himself and a for-

mer attorney, Colson, which would be incompetent as between Reich and Roth; but which we shall nevertheless consider as though it were not. It opens with a letter of November 27th from Reich to Colson, in which Reich said that the Griswold attorneys had offered $35,000, but that he and Roth had quarreled as to how this should be apportioned. (It is true that Roth's memorandum did say that on November 2nd the Griswold Company had offered $35,000; it added that he refused this offer on Reich's instructions and demanded $45,000 without a license. Reich does not deny that Roth submitted to him this offer; and it is apparent that by the 20th there was none such outstanding. For this reason we have begun with the the letter of the 20th.) Acting on Reich's letter to him Colson wrote to the Griswold attorneys on December 1st, saying that he understood that an offer of $35,000 had been made, but that it was not acceptable unless the Griswold Company would apportion the amount of the settlement between the action and the paid-up license fees, and suggesting a "fair division of the settlement." (So far as appears, there had never in fact been any suggestion that the Griswold Company should apportion the amount of the settlement.) The attorneys answered on the 4th, saying that the Griswold Company had never offered more than $30,000 and that $35,000 had been merely "advanced" by them "for discussion." They said that the Griswold Company had never objected to any division of the sum paid in settlement, and concluded that all offers were off unless the parties agreed before the first of the year. On December 11th Colson wrote Reich, saying that he had seen a member of the attorneys' firm who had told him that "the Griswolds were no longer willing to settle for $30,000 or any sum approaching that figure"; that "he believed it was futile to try to settle the matter" and that the attorneys "were going to turn the case over to their patent counsel for trial." Nevertheless, the letter closed with a suggestion that possibly a "new proposal" might come from the attorneys. A new proposal did come— $25,000—as we have said, and Reich accepted it; but it fell through.

If Roth had in fact refused an offer which Reich wished to accept, it would have been reason for reducing Roth's fee by the difference between the recovery and what he refused; and, although the fee itself would have had to be computed on the larger amount, the reduction might even have altogether extinguished the claim. The burden was on Reich to establish such a defence, and there is not the thinnest shred of evidence in the correspondence now before us which does so. Rather, the very opposite affirmatively appears: the original offer of $35,000 was rejected; the second offer of $30,000 was withdrawn before Reich accepted it; Roth submitted to Reich the third offer of $25,000, and upon Reich's acceptance of it the Griswold Company repudiated the contract. In short, not only has Reich failed to prove the charge, but Roth disproved it.

The second objection—Roth's failure to prosecute the first count—was based on the following facts. Roth had put in no evidence to support the count; the judge had declared at the close of the trial that the only question in his mind was whether or not to dismiss it on the merits; and Roth thereupon asked leave to discontinue, which was granted. During the hearings before the referee in this proceeding, Reich did not question the propriety of Roth's action, nor did he suggest that Roth was at fault for failing to produce evidence in support of the count, or for not claiming a larger ad damnum. On the petition of review, however, Reich's new lawyer, Cregan, did argue that Roth's voluntary dismissal was a "withdrawal" from the case, as the retainer permitted; and that this disentitled Roth to more than the $750 which Gross and Blumberg had received originally. Judge Moscowitz overruled this objection which was patently without merit, because after the judge's ruling in the New York action, Roth's decision to submit to a voluntary nonsuit, rather than to a judgment on the merits, was obviously right; and it was not what the retainer meant by "withdrawing" from the litigation. Indeed, the argument is preposterous.

 The third objection—that Roth was negligent in preparing the first count and in producing evidence to support it—Cregan also made for the first time before Judge Moscowitz. It amounts to a charge of professional incompetence or neglect, and upon it too Reich had the burden. The record did not contain a syllable to support it; but Cregan argued that this was because Reich had been denied access to papers in Roth's possession by which he could have proved the issue. (Although Reich has charged very generally that "papers" necessary to his defence were suppressed, this and the Chandler claim are the only issues on which it appears in what way any papers could have been material.) Upon inquiry by Judge Moscowitz Cregan said, however, that he had then "seen all the papers or had access to them"; and he asked time to prepare a memorandum, showing that a much larger claim than $522 should have been made, and could have been proved. The judge allowed him two weeks—all that he asked—but he never filed any memorandum; and there the matter rested so far as concerned Reich's side. On the other hand Roth filed an affidavit of the accountant who had prepared the bill of particulars for the first count, and who swore that he had found "no documentary proof to support the credits claimed by Mr. Reich." The petition for review was an appeal, and Judge Moscowitz was the appellate court; as such he could not properly have decided the charge upon the merits. At most he could have granted leave to the referee to reopen the hearings and determine the issues; but to do that he had to find at least some prima facie support for the charge upon the merits. If we read Cregan's argument as such a motion (incidentally, it is not at all clear that he so intended it), we can see nothing which the judge could have done except to deny it, as he did. Moreover, since on this appeal we have nothing before us but whether Judge Moscowitz's decision was right, as it was, his order pro tanto must be affirmed. Reich's present assertion that he had not seen the documents may, or may not, be true; but it is in any event irrelevant. Cregan spoke for him; Cregan declared that he had seen all the papers; Cregan was satisfied. The notion that after such an admission by his attorney, a client may upset all that was done in reliance upon it, would make impossible the conclusion of any law suit whatever. As to this objection also the order must be affirmed.

There remains the fourth objection; and this requires a further statement of facts. The retainer agreement required Roth to deduct from any recovery on which his percentage was to be computed, all expenses with the exception of expenses—over $100—of retaining an accountant and a special counsel. Reich claims that the allowance to his counsel, Schwartz, in this proceeding and Schwartz's disbursements were part of the deductible expenses, and should be deducted from the recovery against the Griswold Company in computing the fee. This claim the referee and the judge overruled, and in doing so we think that they were in error, for the following reasons. The New York action against the Griswold Company was begun in November, 1941; and it was followed by two successive defensive moves in other jurisdictions: i. e. actions to procure a judgment declaring Reich's patents invalid, and that they did not cover those articles for whose license fees Reich was suing in New York. The first of these was brought in the United States District Court for Connecticut, but it was dismissed on a point of venue; the second was brought in the United States District Court for the Eastern District of Pennsylvania where it well lay. In time it became apparent that this action was likely to come to trial before the New York state action—a result which both Reich and Roth wished to prevent—and, after the Pennsylvania court had denied an application to postpone the trial of that action until the New York action was tried, and within a few days of the time when the federal action would come on, Reich filed the petition in this proceeding, and moved to enjoin the prosecution of the federal action. In this he succeeded, not only in the district court, but before us,[1] on the theory that an injunction would conserve Reich's property

---

[1] Application of Reich, 2 Cir., 146 F.2d 162.

and permit a composition, in which all his creditors could be paid. For this we relied upon an affidavit of Reich that, since he had no money, he would be unable to defend the Pennsylvania action, which would therefore go against him by default, and establish conclusively against him the issues on which the New York action turns. On the other hand, he had the means of prosecuting the New York action, because Roth was under contract to do so, and in it he was likely to recover a substantial sum; a chance which would be ended if the Griswold Company pleaded in the New York action the judgment of the federal action taken by default.

■ Upon these facts Schwartz for Reich argued before the referee that the proceeding now at bar was a step in the prosecution of the New York action, and that the expense of it was a part of those disbursements which Roth must deduct from the recovery in computing his fee. It is true that this proceeding had other purposes and other results than to protect the New York action; but, as matters stood when the petition was filed, only an injunction would preserve it; and we cannot understand why the expense of at least that move was not a disbursement to be deducted from the recovery. Indeed, if it were necessary so to hold, we should construe the retainer as requiring Roth to defend Reich's claims in the Pennsylvania action itself, if Schwartz had not succeeded in enjoining it. Roth's undertaking was to represent Reich "in asserting any and all claims * * * against the Griswold Manufacturing Company"; and surely that included preventing their extinction by a declaratory judgment. This does not mean, it is true, that the whole expenses of the proceeding at bar must be deducted from the recovery; obviously, they should not, for, although the proceeding was a step in "asserting any and all claims * * * against the Griswold Manufacturing Company," it was also a composition with Reich's creditors. In short only the expenses of procuring and holding the injunction, and of finally disposing of the federal action should be deducted; the rest were expenses of the composition as such. This record does not contain evidence which would allow us to divide the allowance and disbursements as they must be; but certainly a very substantial proportion of the allowance, and some of the disbursements are properly attributable to this aspect of the proceeding. Since the allowance—which we are affirming—was only $1700, and Roth's fee is to be reduced by only a third of that part of it which should be attributed to the Griswold claim, the deduction cannot at most be large. It would be to the last degree absurd to incur the time and expense of another hearing; and, although we have no power to force the parties to a settlement, we think it not out of place to suggest, as a piepowder division, that the amount to be deducted from the recovery be taken as $900, and that Roth's claim be reduced by $300. However, unless the parties can agree, we see no escape from a remand to the referee. The foregoing disposes of Roth's claim.

### The Claim of Chandler.

Chandler was retained as a specialist—a patent lawyer—under a written agreement between him and Reich, made on February 15, 1944, in which Chandler agreed to serve for $4.50 an hour as the work proceeded, and an added $5.50 out of the "first 'recoveries." On January 3, 1945,. Reich swore to a petition on which the referee authorized the employment of Chandler, in which he said: "It is necessary that I retain patent counsel" because Roth was "not a patent attorney" and was. "not qualified to prepare and try these aspects of the case." Indeed, the retainer itself forecast the probability that patent counsel would be retained, as we have said. Nevertheless, Reich had the hardihood to swear before the referee that Roth had forced him to retain Chandler, and to demand for that reason that the claim be disallowed. The referee did not believe him, and his finding is conclusive.

■ The claim being based upon the number of hours devoted to the work, Chandler supported it by recourse to "time slips" which he offered in evidence, and which the referee received. Chandler had copied these in a schedule attached to his proof of claim; and Schwartz, who was representing Reich, had ample opportuni-

ty to compare the schedule with the originals. He did not request that they should be kept in court; nor did Reich himself. Indeed, upon the hearing before Judge Moscowitz, Schwartz said in argument that he and Reich had gone over all the papers in detail. Reich's position upon this appeal is that he never had any opportunity to examine the "time slips," or to compare them with the schedule. We answer, as we have answered regarding the documents relative to the first count, that he had no right to see them; having retained Schwartz to contest the claim, what satisfied Schwartz, while Schwartz was his attorney, must satisfy him unless Schwartz was unfaithful to him. We affirm the allowance of Chandler's claim.

### The Allowance to Schwartz.

■ The allowance to Schwartz stands on a somewhat different basis from the claims of Roth and Chandler. Those were debts to be proved in the composition; this was an allowance to the Debtor's attorney in the composition proceeding itself. Seventeen hundred dollars was a very modest allowance for Schwartz's services, which included, not only contesting the claims of Roth and Chandler, but procuring the injunction and maintaining it upon an appeal to this court. It is the universal rule that an appellate court will not review allowances to attorneys except in cases of an obvious miscarriage of justice.[2] Reich's attack upon this allowance challenges the number of hours which Schwartz says he spent and his statement that five dollars an hour merely covered his overhead. Schwartz did so justify his request for $2250; but the referee was not bound to make the allowance upon that basis, although the amount was a limit beyond which he could not go. On the contrary he was justified—and indeed it is far the best method—to survey the services as a whole and to form an overall estimate, based, not upon hours spent at an hourly charge, but in general upon his own knowledge of the value of such services. To hold that $1700 was beyond any fair measure would be utterly unwarranted. We affirm the order as to Schwartz's claim.

■ Throughout Reich intimates, if indeed he does not charge, that Roth and Schwartz were faithless to their duty as his attorneys. There is not the slightest evidence to justify these aspersions; they appear to be completely irresponsible; the exasperated outbursts of disappointment at the result of the litigation. On the contrary the record is one of tedious and exacting labor, which appears to have been faithfully and competently done under peculiarly trying circumstances, and at a return which would be entirely inadequate, had more money been involved. It is apt to be precisely in those cases where the time and expense of unravelling the verbal snarls in which a dispute is enmeshed is great, and where only a small sum is at hazard, that the client thinks that the lawyer has had too large a share, and the lawyer, that he has been underpaid; and neither is to be blamed. Until human affairs become less complex—and surely there is no sign that that is likely—we must face the alternatives of compromising our disputes, or of losing much of the stake in order to decide who is the winner.

Orders affirmed, except as modified above.

---

[2] Dickinson Industrial Site, Inc., v. Cowan, 309 U.S. 382, 389, 60 S.Ct. 595, 84 L.Ed. 819; Tracy v. Spitzer, etc., Co., 8 Cir., 12 F.2d 755, 757; William H. Rankin Co. v. Associated Bill Posters, 2 Cir., 42 F.2d 152, 156; United States v. Anglin & Stevenson, 10 Cir., 145 F.2d 622, 630; Dumas v. King, 8 Cir., 157 F.2d 463, 466.