**TEXAS BANK & TRUST COMPANY OF DALLAS, and Republic National Bank of Dallas, Trustee, Appellants,**

v.

**Elijah CRIPPEN, Trustee of Bankers Discount Corporation, Debtor, Appellee.**

No. 15897.

United States Court of Appeals Fifth Circuit.

Aug. 3, 1956.

Rehearing Denied Sept. 5, 1956.

John B. Stigall, Jr., Larry DeBogory, DeBogory & DeBogory, Dallas, Tex., for appellants.

Thomas R. Hartnett, III, Dallas, Tex., for appellee.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

This appeal had its origin in the proceedings for the reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. §§ 501–676, of Bankers Discount Corporation, herein called the debtor. The matters presented by this appeal were before us about a year ago. Republic National Bank of Dallas v. Crippen, 5 Cir., 1955, 224 F.2d 565. We there reversed the order by which the district court rejected the claims of the two banks which were appellants there and here. The appellant, Republic National Bank of Dallas, herein called the Republic Bank, had been the trustee under an open-end indenture dated March 24, 1952, securing an issue of collateral trust notes. The Republic Bank, as trustee, held from time to time under the pledge of the indenture a varying number in substantial dollar amounts of purchase money obligations which had been given by buyers in connection with the acquisition of motor vehicles, furniture, equipment and appliances, as well as some other intangible collateral. The indenture is a lengthy agreement between the debtor and the Republic Bank which covers fifty-nine printed pages of record. Among its terms are provisions for the compensation and expenses of the trustee, including the following:

"V(c) (4) * * *

"At all times hereunder Trustee will be reimbursed for any costs and expenses incurred in connection with action taken by Trustee, and where action is taken at the request of a Collateral Trust Note holder or holders, the Trustee may require indemnification in advance for costs, expenses and any liability that may be incurred.

* * * * * *

"VIII(d) Trustee shall be entitled to reasonable compensation for all services rendered by it in the execution of the Trusts hereby created and to reimbursement of any and all necessary and reasonable expenses, charges, counsel fees and other disbursements incurred by Trustee in the discharge of its duties as such; and, for the purpose of securing the payment of said compensation and disbursements, Trustee and its successors are hereby given and granted a first lien upon the collateral deposited hereunder and upon the proceeds thereof."

These provisions were supplemented by a letter dated March 26, 1952, from the Republic Bank to the debtor setting up a formula for computing the trustee's compensation. The body of this letter read:

"With reference to our appointment as Trustee for Collateral Trust Notes to be issued under Indenture dated March 24, 1952, we wish to advise our fee for acting in this capacity is as follows: acceptance fee, $500.00; annual fee, ¾ of 1% per annum of the amount of collateral on deposit each month, computed on the last day of each month, and payable monthly.

"This annual charge is subject to review and revision at the end of a six month period."

On the basis of the foregoing letter agreement the debtor paid the Republic Bank to the end of March, 1953, the last full month before the inception of proceedings in the bankruptcy court.

The Texas Bank & Trust Company, which will be referred to as the Texas Bank, made loans to the debtor evidenced by promissory notes and secured by the pledge of intangible collateral. The notes provided for the payment of principal, interest and attorneys' fees.

The debtor filed a petition on April 29, 1953, under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. §§ 701–799, for an arrangement with its unsecured creditors. A receiver was appointed by the court on the following day. The plan

provided for two other finance companies to advance funds and to collect customer paper, and to receive five per cent. interest on the advances and ten per cent. of collections. The finance companies were given a first priority of payment and the bank creditors were next in line. This arrangement was approved on June 15, 1953. On August 24, 1953, the court removed the receiver and restored the estate to the debtor for management by a creditors' committee.

On March 31, 1954, creditors filed a petition for reorganization of the debtor under Chapter X of the Bankruptcy Act. This plan provided that:

"The balance due on the principal and regular rate of interest to the secured creditors in Class 1 shall be paid in cash at the time of consummation of the plan, but said secured creditors shall receive nothing for costs, attorneys' fees, penalty interest, nor any other amount."

This plan was not accepted by either of the appellant banks. The appellee, Elijah Crippen, who had been appointed by the court as Trustee of the debtor in the reorganization proceedings submitted an amended plan containing, in lieu of the proviso quoted, the following:

"1. The balance due on the principal and regular rate of interest to the secured creditors in Class 1 (whether collateral of said creditors is sufficient to secure them or not) shall be paid in cash at the time of consummation of the plan. Said secured creditors and the Republic National Bank as Trustee under a Collateral Trust Agreement shall further receive in cash their costs, Trustee's fees and attorneys' fees in an amount allowed by the Court but said secured creditors shall not receive any penalty interest. The amounts to be paid to secured creditors under this plan shall not be charged with any costs of Court nor any other costs in connection with any proceeding."

This plan was accepted by all of the secured creditors and by substantially all of the unsecured creditors.

The Republic Bank filed a claim which was broken down into several categories. It sought

| | |
|---|---:|
| Fees measured by the contract percentages | $11,879.97 |
| Extraordinary services of bank personnel with respect to indenture provisions | 6,500.00 |
| Special attorneys for consultations | 2,500.00 |
| Federal Deposit Insurance Corporation law suit | 2,500.00 |
| Attorneys' fees in bankruptcy | 20,000.00 |
| Special services of bank personnel in preparation extra reports and special auditing | 10,081.00 |
| Out-of-pocket expense | 500.00 |
| | $53,960.97 |

The Texas Bank filed a claim for attorneys' fees which were originally computed at the contract rate of ten per cent. but subsequently reduced to $7,500.00. The court refused to hear testimony on these claims and disallowed them. On appeal this court reversed saying that the district court was without authority to disregard and ignore the provision of the plan which gave to the appellants their costs, trustee's fees and attorneys' fees in an amount to be allowed by the court.

On the reversal and remand by this court testimony was offered by the Republic Bank showing the matters handled by the executive personnel of the bank in the nature of extraordinary and unusual services in addition to the normal duties which it would have been called upon to perform as trustee. The correctness of the fee claimed as measured

by a percentage of the face value of the collateral held was verified by a witness. The claim for $2,500.00 as fees for special attorneys for consultations was apparently abandoned. The fee of $2,500.00 claimed in connection with a suit of Federal Deposit Insurance Corporation was included in the amount claimed as attorneys' fees in bankruptcy. A witness for Republic Bank testified that special and additional services of administrative officers and personnel computed on a cost accounting basis is in the amount of $10,081.00. There was also the statement of a witness for the Republic Bank that out-of-pocket disbursements were estimated to be $500.00. The Republic Bank put on two witnesses to testify as to attorneys' fees, one of whom thought fair compensation would be between $18,000.00 and $22,000.00, while the other testified that $12,500.00 would be reasonable.

For the Texas Bank there was testimony as to the services of its counsel in connection with the collateral held by it and put on a witness who testified that a reasonable attorneys' fee would be $7,500.00.

At the conclusion of the testimony the judge stated:

"In accordance with the direction of the Circuit Court of Appeals, we have spent the day in going over the record which this Court already knew very well, and once more the picture is presented of a badly bankrupt corporation, which was resuscitated by virtue of our bankruptcy laws allowing reorganization proceedings, and out of that reorganization proceedings came a plan for such reorganization which was accepted by a large majority, almost a hundred per cent of the creditors, and the reorganization went forward and the creditors of a large excess of indebtedness over assets were paid with the understanding that those who had securities would be paid and the others might not get anything.

"That is what was done. And I see no merit, Gentlemen, in the attempt of the Republic Bank and Trust Company, under these facts, and the Texas Bank and Trust Company, to secure further payments allegedly for service or attorney fees when the testimony taken today shows that those services were services that naturally would be performed by banks. The Republic Bank had its regular paid attorneys. The Texas Bank and Trust Company sent an attorney up to Chicago and that attorney did something for the Bank, but he would sit and discuss it with an officer of the bank who was in charge of the loans.

"The demands made here are astonishing to the Court, and I cannot allow anything whatever to either of these claimants, and, therefore, allowance to the Republic Bank and Trust Company and the Texas Bank and Trust Company are denied."

The foregoing is hardly a compliance with Rule 52, Fed.Rules Civ.Proc., 28 U.S.C.A., requiring findings of fact. Woodruff v. Heiser, 10 Cir., 1945, 150 F.2d 873, certiorari denied 326 U.S. 778, 66 S.Ct. 271, 90 L.Ed. 471. The court entered an order denying the claim of each of the appellants.

■ The district court apparently misconstrued our earlier opinion. The court's statement that the services of the Republic Bank, as Trustee, and of appellants' counsel "were services that naturally would be performed by banks" does not afford a legal basis for rejecting claims based upon obligations created by valid contracts and recognized and affirmed in the plan of reorganization. Upon the remand of the cause the district court was directed to hear testimony upon the claims of the appellants and determine what, if any, costs, trustee's fees or attorneys' fees should be allowed. The testimony was received. Had it appeared that no services were rendered by the

Republic Bank as Trustee, or by the attorneys for either of the appellants, within the contemplation of the instruments under which the debtor's obligations were incurred, for which compensation had not been made, then the district court, in the exercise of that "broad judicial discretion" mentioned in our former opinion, might have denied any allowances for compensation. But such is not the situation which the record presents. On the contrary it appears that services were rendered for which allowances should have been made. To be sure, the paper pledged to the Republic Bank, as Trustee, was collected, for a percentage fee, by the two finance companies from a date soon after the bankruptcy court's jurisdiction attached, but this would not reduce the amount of the Republic Bank's allowable compensation as it was provided in the trust indenture that for its services in connection with the collection of collateral it should receive compensation in addition to its compensation as trustee.

Our review of the record does not disclose to us any such conflicts of testimony as would require a determination of credibility of witnesses by the initial trier of the facts. Our review of the testimony has persuaded us that the percentage compensation of the Republic Bank as Trustee has been proved and should be allowed in the amount of $11,897.97. The evidence submitted by the Republic Bank as to the time spent by its executive and administrative personnel, in rendering extraordinary services, the nature of the extraordinary services performed, and the methods of computing the amounts claimed for such services, is not such as, in our opinion, would justify the making of an allowance. There was not any verification of the out-of-pocket expense claim and the basis of the estimate was not shown and hence no allowance would be justified.

In measuring attorneys' fees to be allowed in a bankruptcy matter the courts are to consider the time and labor expended, the skill demanded and employed, the amount involved and the result achieved, as well as any other factors which might be relied upon as guides. See Canon 12, Canons of Professional Ethics of the American Bar Association; Sampsell v. Monell, 9 Cir., 1947, 162 F.2d 4. We are and should be champions of the doctrine that the lawyer laborer is worthy of his hire, but those who are to be paid by allowances from funds administered by courts of bankruptcy must expect to be moderately compensated rather than richly rewarded. In re Curtis, 7 Cir., 1900, 100 F. 784, 4 Am.Bankr.Rep. 17; In re New York Investors, 2 Cir., 1935, 79 F.2d 182, certiorari denied Endelman v. Reconstruction Finance Corp., 296 U.S. 649, 56 S.Ct. 308, 80 L.Ed. 462. Therefore we think the amount to be allowed to Republic Bank for the services of its attorneys should be fixed at $12,500.00, the lowest of the amounts shown by the testimony.

Most of our foregoing comment about attorneys' fees is as applicable to Texas Bank as to Republic Bank. Applying the rule that is here applicable we find a proper allowance to Texas Bank for its attorneys' fees is the amount of $5,000.00.

A judgment should be entered by the district court against the appellee in favor of the appellant, Republic Bank, for a trustee's fee of $11,897.97, and attorneys' fees of $12,500.00, and in favor of Texas Bank for attorneys' fees in the amount of $5,000.00. For the entry of such a judgment the cause is

Reversed and remanded.