**In the Matter of the DOLE COMPANY, Debtor.**
**No. BK–63–15–ND.**

United States District Court
D. Maine, N. D.

July 19, 1965.

Gerald E. Rudman, Bangor, Me., Joseph Kruger, Boston, Mass., petitioners.

GIGNOUX, District Judge.

This matter is before the Court on the petition of Joseph Kruger and Gerald E. Rudman, attorneys for The Dole Company, the debtor in possession in this proceeding for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701–799, for review of an order of the referee in bankruptcy awarding them $30,000 as counsel fees.

The necessary background facts can be briefly stated. The Dole Company has been in business for many years as an electrical contractor, with its principal office at Bangor, Maine. On January 17, 1963, it filed with the referee at Bangor a petition stating its intention to propose a Chapter XI arrangement with its unsecured creditors. At the time of the filing of the petition the debtor was working on substantial construction projects, either as prime contractor or as subcontractor, in Maine, New Hampshire, Vermont and Massachusetts. Its assets, as set forth in the balance sheet prepared by the court-appointed auditors (as at February 28, 1963), amounted to $522,029.-83, and its liabilities to $628,008.16. Upon the filing of the petition the referee authorized the debtor to operate its business as debtor in possession, and no receiver or creditors committee was appointed. On February 19, 1964, a plan of arrangement was confirmed providing for a 20% cash dividend to unsecured creditors. All such dividends have either been paid or funds are now on deposit with which to pay them, and the debtor is continuing in business. The total amount which has been thus allocated for the payment of the 20% dividend to general creditors is $76,132.87.

The petitioners have acted throughout these proceedings as counsel for the debtor and for the debtor in possession. Their principal services were rendered during a period which extended from December 21, 1962, through March 24, 1964, although there are additional services which have been required of them since in resolving disputed claims and in closing the case. Their services, as the referee found, have justifiably required a total time expenditure of 1411 hours. The referee further found that a substantial number of these hours was devoted to routine telephone calls, correspondence and office work, but that a considerable portion of petitioners' time was spent in attendance at various court proceedings, in researching legal problems, in preparing numerous applications and proposed orders, and in extensive negotiations with creditors, opposing counsel, lenders, bonding companies, suppliers, contractors, owners and the referee. There is no question, as the referee found, that the caliber of the professional services rendered by the petitioners was the primary factor leading to the success of the Chapter XI proceeding and that the professional standing and abilities of both counsel are of the highest order.

The petitioners' original request was for an allowance of counsel fees in the amount of $50,000, which would reflect an hourly rate of $35.44. In his original opinion the referee reviewed the various factors to be weighed by the court in determining a fair and reasonable allowance for attorneys' fees, including the complexity of the problems involved, the opposition encountered, the results achieved, the time consumed, the experience and standing of counsel, and the size and ability of the estate to pay. See Texas Bank & Trust Co. v. Crippen, 235 F.2d 472, 476 (5th Cir. 1956); In re Owl Drug Co., 16 F.Supp. 139, 142–145 (D.Nev.1936), aff'd sub nom. Cohn v. Edler, 90 F.2d 823 (9th Cir. 1937); In re Osofsky, 50 F.2d 925, 927 (S.D.N.Y. 1931); 3 Collier, Bankruptcy, para. 62.-12(5) (14th ed. 1964). In a thoughtful analysis, he pointed out that the allowance must represent a fair return to the attorneys involved and that it must be sufficient to encourage the future participation of experienced and reputable attorneys in bankruptcy proceedings; but that at the same time the principle of economy in the administration of bankruptcy estates must be considered and attorneys cannot expect to be compensated in bankruptcy at the rate which they might reasonably charge a private

client. See Texas Bank & Trust Co. v. Crippen, supra; In re Seed Marketing Ass'n, 228 F.Supp. 812, 813 (D.Neb. 1964); In re Owl Drug Co., supra; 3 Collier, op. cit. supra, para. 62.12(5). Cf. In re Gilbert, 276 U.S. 294, 296, 48 S.Ct. 309, 72 L.Ed. 580 (1928). The referee concluded, on the basis of the entire record, that a fair and reasonable total allowance for the services rendered by petitioners ought not to exceed $30,-000. Following petitioners' request for reconsideration of his original order, he reaffirmed this conclusion in a second opinion, in which he amplified his previously expressed views and dealt specifically with the points which are raised by petitioners on this petition for review.[1]

■ It is the universal rule that the fixing of attorneys' fees in bankruptcy is peculiarly within the discretion of the referee and that the referee's judgment, if sufficiently supported by evidence and free from error of law, ought not to be disturbed unless it is so manifestly inadequate as to constitute an obvious miscarriage of justice. Roth v. Reich, 164 F.2d 305, 309, 311 (2d Cir. 1947); In re Valentine, 139 F.Supp. 576, 577 (D.C.Md. 1956); In re Higgin Mfg. Co., 19 F.Supp. 120, 123 (E.D.Ky.1937); In the Matter of E. S. Brown Co., 9 Am.Bankr.R.,N.S., 439 (D.Mass.1927); In re Am. Range & Foundry Co., 41 F.2d 845, 847–848 (D.Minn.1926); 3 Collier, op.cit. supra,

para. 62.12(4); cf. Klein v. Rancho Montana DeOro, Inc., 263 F.2d 764, 770 (9th Cir. 1959). The Court has no hesitation in holding that the referee's award is amply supported by the evidence.[2] Petitioners contend, however, that it suffers from three errors of law.

■ The first error alleged is that in determining the compensation to be awarded petitioners the referee improperly used as a guide the minimum hourly charge of $15 recommended by the local county bar association for attorneys practicing in the Bangor area. As the referee noted in his opinion on reconsideration, petitioners' argument on this point results from a misconception of the nature of the referee's reliance on this factor in determining a reasonable allowance for their services. A careful reading of the referee's opinions makes it clear that he utilized the local minimum fee schedule as no more than a starting point providing a helpful reference and that he weighed it cumulatively with numerous other factors in reaching a composite evaluation. Cf. In re 2747 Milwaukee Ave. Bldg. Corp., 12 F.Supp. 557, 567 (N.D.Ill.1935). Thus, the referee specifically noted that the recommended local minimum hourly rate "must be appropriately adjusted in response to the skill and diligence demonstrated, the complexity of the problems confronted, the opposition encountered, the results achieved, the experience and standing of

1. The referee correctly ruled that the facts that the debtor did not object to the fees requested by petitioners and that there was no substantial creditor objection thereto did not relieve the referee of the responsibility of examining the application with care and of insuring that the allowance was reasonable and proper. In re Seed Marketing Ass'n, supra, 228 F.Supp. at 813, 823; In re Owl Drug Co., supra, 16 F.Supp. at 144; 3 Collier, op. cit. supra, para. 62.12(5), p. 1496. Nor is the Court relieved of this duty by the fact that no one appeared to oppose the instant petition for review of the referee's allowance. In re Goodman, 17 F.Supp. 337 (W.D.N.Y.1936); 3 Collier, op. cit. supra, para. 62.12(4), p. 1485, n. 61.

2. Petitioners contend that the referee's allowance is not supported by the evidence because it does not exceed their overhead costs in maintaining their law offices and because it reflects neither their usual time charges to private clients nor the difference between the compensation due Mr. Kruger as a specialist in Chapter XI proceedings and Mr. Rudman as a general practitioner. Petitioners failed to establish a record on which the referee and this Court can determine these questions. Petitioners' overhead costs are not in evidence. Nor are their customary time charges or their relative contribution to the total services they rendered. Furthermore, as has been noted, attorneys' fees in bankruptcy cannot and should not equal what private clients might be expected to pay for similar services.

counsel and the size of the estate." He pointed out that in accordance with Canon 12 of the Canons of Professional Ethics of the American Bar Association (1957), upon which petitioners rely, "the customary charges of the Bar for similar services" may be considered in fixing fees, and in determining the customary charges of the bar for similar services it is proper to consider "a schedule of minimum fees adopted by a Bar Association." In fact, the referee allowed a fee which represents an hourly rate of $21.-26, which, as he pointed out, is substantially higher than the recommended bar association minimum of $15. The referee's opinion and his allowance thus belie petitioners' contention that the referee's reference to this factor was inappropriate, or that he placed undue reliance upon it.

The second error alleged by petitioners is the referee's consideration, as one of the factors derogating against the requested allowance, of the fact that it was large in proportion to the total payments to general creditors ($50,000 as compared with $76,132.87, approximately 66%). In this connection, petitioners contend that the referee ignored a more apposite yardstick for measuring compensation in a corporate reorganization proceeding (whether under Chapter X or XI), which they suggest would be the ratio between the allowance and the size of the estate ($50,000 as compared with $522,029.83, approximately 10%). See Finn v. Childs Co., 181 F.2d 431, 435–437 (2d Cir. 1950).

■■■ The Court cannot agree with petitioners that it was improper for the referee to consider the relationship between the requested allowance and the total distribution to general creditors. This factor has been considered in other Chapter XI cases, Application of Pine Tree Associates, 77 F.Supp. 270, 271 (E.D.N.Y.1948), in the unreported Chapter XII case on which petitioners rely, In re Rayfield, In Bankruptcy No. 1080–62, D.Mass., July 19, 1963, and in Chapter X proceedings, In re Lennox Metal Mfg. Co., 263 F.2d 891 (2d Cir. 1959), as well as in straight bankruptcy cases, In re Paramount Merrick, Inc., 252 F.2d 482, 485–486 (2d Cir. 1958); In re Osofsky, supra; see 3 Collier, op. cit. supra, para. 62.12(5), p. 1493, n. 81. It is true, as petitioners point out, that in a Chapter XI proceeding the amount awarded as counsel fees does not *pro tanto* diminish the dividends to be received by general creditors, as is true in a straight bankruptcy case, because in a Chapter XI proceeding the amount of dividend to creditors is fixed before attorneys' fees are awarded and any reduction in the allowance requested merely reverts to the debtor and does not directly benefit the creditors. See 8 Collier, op. cit. supra, para. 5.34(6). Still, the amount of the agreed payments to general creditors reflects their assessment of the financial strength of the debtor; and the financial strength of the debtor must always be in mind in awarding counsel fees in a Chapter XI proceeding, for the debtor pays them and the creditors will normally be concerned that the debtor emerge from the Chapter XI proceeding in a healthy financial condition. Cf. Finn v. Childs Co., supra, 181 F.2d at 435.

■ Nor can the Court agree with petitioners that the referee failed to consider the relationship of their fee to the size of the debtor's estate. He explicitly did so both in his original opinion and in his opinion on reconsideration. In his latter opinion he cited at least six cases on the point,[3] described the factor as "among the more important tests to be applied in such matters," and by repetitive citation of In re Goodman, supra, underscored the attention he accorded to it. The Court finds no basis in the record for petitioners' argument on this point.[4]

3. Blanch v. Rankin, 291 F.2d 217, 219 (5th Cir. 1961); In re Lennox Metal Mfg. Co., supra; In re Paramount Merrick, Inc., supra; In re Goodman, supra; In re Osofsky, supra; In re Goldville Mfg. Co., 123 F. 579, 584 (D.S.C.1903).

4. It is noteworthy that in Finn v. Childs Co., supra, 181 F.2d at 435, a Chapter X

Nor does the Court find merit in the third error alleged by petitioners. It is that the referee refused to recognize as a factor in fixing the award the contingent nature of the fee of an attorney for the debtor in a Chapter XI proceeding. In his opinion on reconsideration the referee agreed that "counsel are correct in their assertion that the payment for their services hinged largely upon their success in procuring confirmation of this arrangement." See Rudin, Allowances in Chapter XI Proceedings, in Proceedings of Seminar for Newly Appointed Referees in Bankruptcy Conducted by the Administrative Office of the United States Courts, 51, 53 (1964). He pointed out that, with minor exceptions, legal services in behalf of a debtor who fails to secure confirmation of his proposed arrangement are not compensable as a cost of administration in an ensuing bankruptcy proceeding by virtue of Section 337(2) of the Bankruptcy Act, 11 U.S.C. § 737(2).[5] He further held, however, that "in the case at bar there is nothing inherently contingent about the payment of compensation. It is the law and not the lack of assets which precludes compensation to counsel for a Chapter XI debtor whose plan is denied confirmation. Indeed, there can be no mistake about the fact that Congress clearly intended that such failures should go uncompensated." Accordingly, he concluded that "neither Section 337(2) nor any other provision of the Act empowers the bankruptcy court to award compensation

at all in excess of the reasonable value of the services."

The issue thus presented appears to be one of first impression. Petitioners rely analogously, however, on straight bankruptcy cases in which the courts, in fixing fees for counsel for trustees, have taken into consideration the inherently contingent nature of fees in "no asset" bankruptcy cases where recoveries have been made which were tantamount to salvage. E. g., In re Barceloux, 74 F.2d 288, 289, 293 (9th Cir. 1935); In re Seed Marketing Ass'n, supra; In re Belfort Corp., 136 F.Supp. 1, 4 (D.Md.1955); In re Osofsky, supra. Petitioners contend that fees awarded in successful Chapter XI cases should also reflect their inherently contingent nature, in order to attract competent attorneys to undertake Chapter XI proceedings and to compensate them for the hardship they suffer on failure.

 The Court disagrees. As the referee held, the analogy to the attorney for the trustee in a "no asset" straight bankruptcy case is far from perfect. His fee is contingent simply because in such a case unless *he* succeeds in securing assets, the estate has none out of which to pay him. In re Barceloux, supra; In re Seed Marketing Ass'n, supra; In re Osofsky, supra; In re Levinson, 19 F.2d 253, 256 (W.D.Wash.1927). The law does not prohibit him from being compensated, as Section 337(2) prohibits the court from fully compensating the attorney for the debtor in an unsuccessful Chap-

case on which petitioners rely, the court felt that counsel fees which were 10% of the value of the estate as originally set were large. Yet, as has been noted, the $50,000 sought by petitioners is approximately 10% of the original value of the estate in the present case.

5. Section 337(2) provides in relevant part as follows:
 "Sec. 337. At such meeting [of creditors] * * * the judge or referee shall, after the acceptance of the arrangement— * * * (2) fix a time within which the debtor shall deposit * * * the money necessary to pay the costs and expenses of the proceedings * * * *Provided, however,*

That in fixing any such allowances the court shall give consideration only to the services which contributed to the arrangement confirmed or to the refusal of confirmation of an arrangement, or which were beneficial in the administration of the estate, and the proper costs and expenses incidental thereto * * * *."

The referee also noted that under Section 64, sub. a(1) of the Bankruptcy Act, 11 U.S.C. § 104, sub. a(1) even the allowances permitted by Section 337(2) are subordinate in payment to the administrative costs and expenses incurred in the subsequent bankruptcy proceeding. See 3 Collier, op. cit. supra, para. 64.107.

ter XI proceeding even if the estate abounds with assets. The purpose of the courts in awarding a premium to the productive attorney for the trustee in a "no asset" straight bankruptcy case is to *encourage* the bar to undertake such cases; that is, the premium is an "incentive to attorneys to put forth their best efforts in cases which appear unpromising." In re Osofsky, supra. On the other hand, the purpose of the restrictive provisions of Section 337(2) appears clearly to be to *discourage* the bar from undertaking Chapter XI cases which appear unpromising. This clear Congressional intent would be thwarted by awarding a premium to debtors' attorneys in successful Chapter XI cases. Cf. In re Higgin Mfg. Co., supra 19 F.Supp. at 123.[6] The Court holds that the referee was correct in refusing to increase the amount of the petitioners' fee because of any risk that by virtue of Section 337(2) of the Act they would not be fully paid in the event of the failure of their efforts.

■ For the reasons stated, the Court finds no errors of law in the referee's determination of the amount to be allowed petitioners for their services in this proceeding. The Court is further satisfied from an examination of the record that no injustice was done in this case and that the allowance made by the referee was entirely adequate.[7] As stated by the court in In re Am. Range & Foundry Co., supra:

"There was evidence before the referee which would have justified a greater allowance than he made to the attorneys for their fees. But it is not the business of this court to retry this question or to substitute its judgment for that of the referee, where there is nothing to show that he did not fairly pass on the question in view of the evidence before him, or that there is any mistake of law. * * * The business of fixing attorneys' fees in bankruptcy matters is one peculiarly for the referee. If this court should make it a practice to pass upon the question of the reasonableness of the allowances made by referees for attorneys' fees, it would mean that it would have to pass upon the question in connection with almost every large bankruptcy matter and a great many of the small ones. To leave the question to the referees tends to create uniformity of charges and allowances, while to repass upon the question here and substitute the judgment of this court for that of the referee would tend to create inequality and confusion. There is nothing more difficult nor embarrassing than to appraise the value of professional services. The appraisal must be based

---

6. The intent of Congress to deny full compensation to the attorney for the debtor in an unsuccessful Chapter XI proceeding becomes further evident in light of amendments to Chapters X and XII made by the Chandler Act of 1938, by which the court was empowered to "allow reasonable compensation for services rendered" in abortive Chapters X and XII proceedings. Sections 246 and 495 of the Act, 11 U.S.C. §§ 646 and 895. Congress has not seen fit to give the court similar power in unsuccessful Chapter XI proceedings. See 3 Collier, op cit. supra, para. 62.32(4), p. 1626, n. 52.

7. Before the referee, as here, petitioners have urged an hourly rate of between $30 and $40 per hour on the authority of a recent unreported opinion by Judge Wyzanski of the United States District Court for the District of Massachusetts, in which he noted:

"Recent litigation in this Court indicates that a senior lawyer of marked ability and specialized experience in bankruptcy doing the regular work of his calling may reasonably charge in the range of $30 to $40 per hour." In re James B. Rayfield, supra.

In that case the court approved an hourly rate of $30 for senior counsel and $25 for junior counsel.

This Court must agree with the referee that there is a very considerable discrepancy between the economy of metropolitan Boston and that of Bangor, Maine, and that the rate of compensation awarded in recent litigation before this Court simply has not attained that found by Judge Wyzanski to have been awarded in the District of Massachusetts.

largely upon the personal opinion of the one who makes it. Even though an occasional injustice be done, the policy of the court must be to leave the determination of the question of the reasonable value of such services to the judgment of the referee."

See also In re Valentine, supra.

The order of the referee is affirmed.