In re Howard GARFINKLE, a/k/a Howard N. Garfinkle, a/k/a Howard Norman Garfinkle, Bankrupt.

Bankruptcy No. 75 B 646.

United States Bankruptcy Court, S. D. New York.

May 14, 1981.

Hershcopf & Graham, Abraham J. Back-enroth and Gerald T. Hershcopf, New York City, for trustee.

Alex L. Rosen, South Palm Beach, Fla., Former Trustee and Former Attorney for Trustee.

R. Nicholas Gimbel, U. S. Atty., S. D. New York, Stuart M. Bernstein, Asst. U. S. Atty., New York City, for U. S.

Podell, Rothman, David & Schechter, Melvyn Rothman, New York City, Special Counsel to Trustee.

Sobel Weissman & Co., East Orange, N. J., Accountants for Trustee.

*Memorandum Opinion and Decision on Applications for Interim and Final Compensation*

EDWARD J. RYAN, Bankruptcy Judge.

On April 22, 1975, these proceedings were commenced by the filing of a voluntary petition in bankruptcy by Howard N. Garfinkle. Thereafter on June 20, 1975, Alex L. Rosen was appointed as the trustee in this case. Then he was retained as co-coun-

sel [1] to the trustee by order dated September 2, 1975.

On October 27, 1976, the firm of Hershcopf & Graham, Esqs., was appointed successor counsel to the trustee. On December 15, 1976, Gerald T. Hershcopf, Esq., senior partner of that firm, was appointed successor trustee, and is presently serving in that capacity, Mr. Rosen having retired.

The other applicants herein are the accounting firm of Sobel Weissman & Co., retained as accountants to the trustee by order dated November 20, 1975, and the firm of Podell Rothman David & Schechter, Esqs., appointed as special counsel pursuant to order dated May 8, 1980, to pursue certiorari proceedings which had been pending prior to the filing of the petition.

On November 17, 1980, an application was submitted requesting that an order be signed providing for the statutory notice of hearing, pursuant to Bankruptcy Rule 203(a)(6), to consider interim and final applications for allowances sought by the aforementioned parties. Pursuant to order of the court, notice of hearing to consider allowances was sent to all creditors and other parties in interest. Hearings on allowances were held on December 19, 1980 and February 24, 1981, wherein all parties were given an opportunity to submit additional affidavits, memoranda of law and to present oral arguments to the courts in support of their respective positions. The hearings were closed and the court took the matter under advisement.

### Application For Final Allowances By Alex L. Rosen, Former Trustee and Attorney For the Trustee

Mr. Rosen is undeniably well recognized as a leading bankruptcy practitioner, having practiced in the insolvency field for over 47 years. It would unduly belabor this memorandum to recount the many substantial matters in which he was successfully involved and with many of which this court has full familiarity.

In this matter, Mr. Rosen served in the dual capacity of trustee and attorney for the trustee during the initial stages of these proceedings for which he now seeks final compensation.

Mr. Rosen's application graphically demonstrates the problems with which he was confronted in performing his services in this estate. The application does not clearly define those services for which compensation is sought as trustee, as opposed to the services which are truly "professional" in character. Appended hereto is a copy of a memorandum decision by District Judge Thomas F. Murphy which is illuminating on the point. In the *Matter of S. R. Stern Laboratories, Inc.*, Bankruptcy No. 92726, U.S.D.C., S.D.N.Y. (Unreported, June 17, 1959) Judge Murphy stated that:

> "The question presented is whether Referee Stephenson was correct in refusing to allow the attorneys for the trustee any amount for certain services admittedly performed by them. He concluded that the services were not 'professional.' . . ."

Judge Murphy in reversing the Referee held that in a difficult and unusual case, ". . . the letter writing of the attorneys, particularly the skill and the tact that they exercised in such correspondence, rose to the dignity of a lawyer's professional effort and that the attorneys should be compensated accordingly. Otherwise the administration of bankrupt estates will be seriously handicapped and confusion will be rampant. . . ."

A graphic demonstration is made by Mr. Rosen of the problems with which he was presented. Putting aside the many irrelevancies, and giving special weight to the heavy drain on this estate by the other pending applications, I am of the opinion that fair and reasonable compensation to him at this time is the sum of $35,000, with leave to apply in the future for a further allowance of full and fair compensation if it shall appear in the future that substantial benefit was conferred upon the estate. For

---

1. The other co-counsel, Krause Hirsch & Gross, Esqs., has not actively participated in these proceedings since their appointment and has not submitted an application for allowance.

example, the application notes that through the efforts of Mr. Rosen, the Howard Garfinkle estate had allowed a general unsecured claim in the sum of One Million Dollars against the estate of Barbara Garfinkle. Whether this, in fact, conferred any benefit on the estate must await further developments.

*Application For Interim Allowances By Hershcopf & Graham, Esqs., Present Counsel to the Trustee*

■ The application submitted by Hershcopf & Graham, present counsel to the trustee, sets forth with great particularity the substantial legal services performed by them on behalf of the estate. There can be no serious question concerning the nature, quantum and value of these services. Even without the benefit of the application, the court is intimately familiar with the services performed, the determined and stubborn opposition encountered, the intricate and complicated nature of the matters investigated and litigated and the substantial results achieved by the Hershcopf & Graham firm. All of these factors weigh heavily in favor of generous compensation (3A Collier on Bankruptcy, 14th Ed., § 62.12 p. 1485).

■ It is evident that but for the vigorous, conscientious and professional manner in which this matter was pursued by the Hershcopf & Graham firm, there would be virtually nothing available for distribution to anyone involved in these proceedings— administration, priority or other claimants.

It would unduly lengthen this memorandum to detail the several successful litigation efforts handled by the Hershcopf & Graham firm, each of which is set forth with great particularity in their application. The court will therefore merely recount the highlights regarding such proceedings.

Certainly the most complicated and time consuming portion of the services rendered by the Hershcopf & Graham firm related to their investigation into the myriad pre- and post-petition business activities of the bankrupt which culminated in an action commenced in the district court against the bankrupt, six other individuals and 54 corporations and partnerships. *Hershcopf v. Garfinkle, et al.,* United States District Court, S.D.N.Y. (CBM). The essence of the action included allegations of bankruptcy fraud and concealment of property through interlocking corporate entities and corporate nominees, the details of which are spelled out in over 800 pages of affidavits and supporting documentation prepared by the Hershcopf & Graham firm and submitted to the District Court in support of the trustee's request for the appointment of a receiver pendente lite.

After several days of trial, a settlement was reached whereby $270,056.56 was ultimately recovered and collected from the bankrupt, but only after seven separate court determinations regarding the settlement, including three rounds of appeals. Each determination was rendered in favor of the trustee.

The Hershcopf & Graham firm was also successful in recovering an additional $130,-890.18 for the estate by dint of their professional services. They recovered $70,000 from Commercial Trading Co., Inc., after asserting breach of contract and fraudulent transfer of claims, and $60,890.18 from City of New York after commencement of certiorari proceedings regarding 40 Sutton Place prosecuted in conjunction with special counsel. The particulars of these services are likewise set forth in the Hershcopf & Graham application and need not be recited here. *Hershcopf v. Commercial Trading Co., Inc.,* 75 B 196,646 (S.D.N.Y.1978), and Certiorari Proceedings, 40 Sutton Place.

As a result of the services rendered by Hershcopf & Graham, an estate which began with virtually no assets at all was directly enhanced to the extent of $442,-595.40.[2]

---

**2.** The $442,595.40 figure includes interest accrued on the principal recovered by the Hershcopf & Graham firm.

In order to accomplish these results, the court finds that the Hershcopf & Graham firm expended over 2,054.4 hours, representing $237,236 in billable time attributable to this matter.

In view of the foregoing, and noting the fact that almost five years have elapsed since their retention, an interim allowance of $180,000 to the Hershcopf & Graham firm is fair and reasonable.

■ The facts of this case require application of the salvage theory of compensation wherein the courts have long held, as a matter of public policy, that attorneys who create an estate which began with virtually nothing are entitled to "generous" compensation. *Hammer v. Tuffy*, 145 F.2d 447 (2d Cir. 1944); *In re Osofsky*, 50 F.2d 925 (S.D. N.Y.1931); see also 3A Collier on Bankruptcy, § 62.12 at 1492.

The Court in *Osofsky* explained the salvage theory as follows:

"[I]n Bankruptcy very often futile quests for assets have to be made. Many times, however much ingenuity and time attorneys may expend, they may not be able to get anything for the estate by their efforts. It is then a question, as in salvage at sea, of no cure, no pay.

"When the efforts of attorneys cause a material increase in the bankruptcy estate, or, as here, create it, they should be well rewarded; otherwise there will not be any incentive to attorneys to put forth their best efforts in cases which appear unpromising.

"Indeed the situation may very well be compared, as I have just hinted, to salvage at sea.

"In salvage cases courts have wisely come to think that, as a matter of public policy, it is necessary to give such adequate reward to a successful salvor as will make others to whom salvage situations are presented interested in attempting salvage operations. There must always be a flavor of generosity in the awards to success in order that an appetite for effort may be stimulated.

"This attitude involves a wise public policy and is as beneficial to shipowners, cargo owners, and underwriters in admiralty law as a similar attitude is to creditors in bankruptcy proceedings.

"VII. If one approaches a case like this, in the light of these reflections and with all the elements of charges which I have above laid down in mind, it is perfectly clear, I think, that, when ... the assets so greatly increased by the efforts of the trustee's attorneys, a generous allowance to them is indicated."

Consequently, the salvage theory of compensation supports this court's finding that an interim allowance of $180,000 to Hershcopf & Graham is both appropriate and reasonable.

■ Sobel & Co., Certified Public Accountants and successors to the firm of Sobel Weissman & Co., request that they be allowed the sum of $29,702.25, with reimbursement of disbursements in the sum of $182.67. An examination of the application shows that unfortunately as in many, if not most, applications for compensation made by accountants, it is very "thin". Couched in general terms, it is impossible for the court to really evaluate the value of the services rendered to the estate.

The disbursements are apparently proper, and they may be reimbursed at this time. This decision is, of course, without prejudice to a restoration of the application so that a more illuminating showing can be made.

■ Podell Rothman David & Schechter, Esqs., rendered services as special counsel to prosecute certiorari proceedings. The application shows the specifics of the services for which compensation is sought. The services were rendered over approximately nine years, including the period of time that the predecessor firm, Podell and Podell, had been representing the bankrupt in the certiorari proceedings. Despite the fact that this applicant did not keep contemporaneous time records, the application demonstrates that their estimate that a minimum of 500 hours were expended on the task is a reasonable estimate. The sum requested is consistent with the usual contingent fee

arrangement which is made in certiorari proceedings. The interim allowance of $23,057.89, of which $2761.17 represents disbursements, is awarded.

The court has given due consideration to the contentions which are well presented in the Government's Memorandum of Law in Opposition to Fee Applications. The sums now allowed represent an unusually high proportion of the estate now on hand. Pointing, *inter alia* to *In re Osofsky, supra,* upon which the trustee's attorneys place heavy reliance, the memorandum shows that the aggregate amount of fees awarded to the attorneys for the trustee and the petitioning creditors was 33⅓ percent of the estate. The facts of *Osofsky* did not warrant the allowance of any larger proportion even on the salvage theory. The work done in that case comes nowhere near the magnitude of the time requirements in the creation of this estate. The *Garfinkle* case is unique as a reading of these applications demonstrates.

Settle an appropriate order.

### APPENDIX

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

|  |  |  |
|---|---|---|
| In the Matter | : | |
| of | : | |
| S. R. STERN LABORATORIES, INC., | : | Bankruptcy No. 92726. |
| Bankrupt. | : | |

------------------------------------X

### MEMORANDUM

THOMAS F. MURPHY, District Judge.

The question presented is whether Referee Stephenson was correct in refusing to allow the attorneys for the trustee any amount for certain services admittedly performed by them. He concluded that the services were not "professional."

It is undisputed that the attorneys for the trustee, without drawing one legal paper, without instituting one lawsuit or making one court appearance, collected over a period of 18 months some $16,000 from 140 debtors. It was accomplished by writing many hundreds of letters. It was not the writing of ordinary collection letters but on an overall basis it required a great deal of study, skill and finesse, occasioned by the fact that the bankrupt had sold its product under unusual conditions. In some instances the debtor was obligated to pay only on reorder and in other instances sale was made on a "guaranteed" basis. Lurking behind the collection of all of the accounts was the possibility of the defense of breach of warranty and false representations, and the probable right of the buyer to return the goods and be relieved. The attorneys for the trustee conducted this correspondence skillfully and professionally, and by dint of their labors created 90% of the entire estate available for creditors.

As we read the referee's opinion these facts are not contested but the referee has strictly applied the mandate of General Order # 42, and the injunction of Judge Learned Hand 28 years ago *In re Eureka Upholstering Co.,* 2 Cir., 48 F.2d 95. In that case Judge Hand said, ". . . the receiver or trustee, and he alone, can recover for services in collecting the estate, and that his statutory fees are the limit of his compensation for these. Any truly legal services he may require are indeed in another class, but his attorney, when he has one, cannot take on his duties, and then recover for them under the guise of legal services, which they are not. It is true that the line is not always easy to draw, but it is there, and referees should draw it straitly, else the estate will be burdened with a duplication of charges." The real issue is whether the referee drew the line straitly.

While it is perhaps true that in the realm of semantics the writing of "collection" letters is far from a profession, and certainly not "legal services" in a strict sense, we feel that in this case, because of the unusual nature of the claims and the possibility of one litigated case upsetting the collection of all of the accounts receivable, the letter writing of the attorneys, particularly the skill and the tact that they exercised in such correspondence, rose to the dignity of a lawyer's professional effort and that the attorneys should be compensated accordingly. Otherwise the administration of bankrupt estates will be seriously handicapped and confusion will be rampant.

Taking a realistic and practical view of the problems that were presented to this estate in marshaling and collecting the assets, and the integrity and standing of the attorneys in question, it seems to us that the referee in drawing the line drew it (with apologies to Euclid) too straight.

Accordingly, the report is overruled and returned to the referee for his determination as to the value of the services of the attorneys for the trustee in collecting the $16,000.

Dated, New York, N. Y., June 17, 1959.