### In re GEOFREEZE CORPORATION, Debtor.

**Bankruptcy No. 83–00016–A.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

June 14, 1985.

Robert D. Powell, Joseph, Powell, McDermott & Reiner, P.C., Washington, D.C., Arthur H. Blitz, Alexandria, Va., for debtor.

Norman Oliver, Office of the United States Trustee, Alexandria, Va.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

We are confronted here by an issue which arises out of the applications for compensation filed by three counsel appointed by this Court to conduct litigation in Philadelphia, Pennsylvania, involving Geofreeze Corporation, debtor herein, as plaintiff and C. Hannah Construction Co. ("Hannah") as defendant. Litigation commenced upon the debtor filing suit to recover an account receivable which represented work performed by Geofreeze as a subcontractor for Hannah.

In early 1983, debtor originally claimed breach of contract damages in the amount of approximately $165,000.00 against Hannah. Subsequently, debtor included in its suit tort claims in excess of $1,000,000.00. In response, Hannah asserted counterclaims against the debtor in the approximate amount of $1,000,000.00. Subsequently, debtor amended its lawsuit to include other parties, including seven bonding companies as sureties. The litigation was complicated by substantial counterclaims asserted by many of these parties. Additionally, Nicholson Construction Company, a second tier subcontractor, commenced a separate action against the same bonding companies which were defendants to the action filed by the debtor.

The litigation proceeded through discovery and pre-trial motions, which were set for trial in April 1984. After being continued twice, the matter was set for trial in August 1984 for ten days. In the summer of 1984, the District Court for the Eastern District of Pennsylvania granted a summary judgment motion against debtor which eliminated the tort claims. The striking of the tort claims left the debtor with a claim for contract damages of $165,-000.00, with consequential damages of $900,000.00, plus a claim for interest and attorney's fees of over $150,000.00.

Despite the advice of special counsel, the debtor and the Creditors' Committee agreed to settle the case prior to its going to trial. Pursuant to the settlement agreement, the debtor and the Creditors' Committee agreed to dismiss its lawsuit in exchange for the following: a dismissal of the $1,000,000.00 counterclaim; a potential $155,000.00 recoupment with respect to the above-mentioned Nicholson suit; and a cash payment of $10,000.00.

Special counsel, Robert D. Powell, has filed two fee applications in this matter. For the period of September 20, 1983 to March 31, 1984, special counsel applies for attorney's fees in the amount of $46,886.00 and out-of-pocket expenses in the amount of $1,489.21. Special counsel's second fee application covers the period April 1, 1984 to July 31, 1984. For that interval, special counsel applies for attorney's fees in the

202

amount of $70,137.00. Thus, special counsel applies for compensation and reimbursement of out-of-pocket expenses in the total amount of $118,512.21.

The services of local Pennsylvania counsel were required in the litigation pursuant to the rules of the District Court of the Eastern District of Pennsylvania. A second local counsel was appointed because of an inability of the original local counsel to continue with the case. Subsequently, both local counsel filed applications for compensation. After a hearing on said applications, this Court approved a total payment to both local counsel in the amount of $10,770.01.

 The Fourth Circuit is one of many circuits to have adopted the Fifth Circuit's reasoning in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), as to the relevant factors for a court to consider with respect to determining a reasonable attorney's fee. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir.1978). The factors which must be considered are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) the attorney's expectation as to his fee; (7) the time limitations imposed by the client or by the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) attorney's fees awards in similar cases. *Id.* In determining a proper attorney fee, a court should first multiply the number of hours reasonably expended by a reasonable hourly rate. *Anderson v. Morris*, 658 F.2d 246, 249 (4th Cir.1981). The court must then adjust the fee based upon the remaining *Johnson* factors. *Id.*

 In accordance with a long-standing requirement of this Court, special counsel submitted an itemized statement of services rendered indicating the date of service, an explanation of the service rendered and the time expended by each individual rendering the same. Over the eleven-month period covered by special counsel's applications for compensation, special counsel's firm devoted 1,168.6 hours to the Philadelphia litigation. As this Court noted during the fee hearings, there were some improper charges contained in the applications, such as lead counsel charging his full hourly rate of $150.00 for time spent in traveling from his office in Washington, D.C. to Philadelphia, Pennsylvania. There is no doubt, however, that a majority of the time appears reasonably spent in pursuing debtor's case.

The hourly rates charged range from $40.00 to $150.00, with an associate rate of $80.00 per hour. In reviewing the time records filed, one of the Court's greatest concerns is with the 453.7 hours of services rendered by special counsel at $150.00 per hour. The customary fees allowed by this court normally range from $70.00 per hour to $135.00 per hour. This Court has held that the customary fees charged by counsel in the immediate vicinity will be relevant in considering the propriety of an hourly rate charged by an out-of-state attorney if the Court believes the more local counsel would have sufficient expertise to fulfill the required role. *In re Nova Real Estate Investment Trust*, 25 B.R. 252, 254–55 (Bankr.E.D.Va.1982). Recognizing special counsel's claimed expertise in both ground-freezing and construction law as well as noting the availability of counsel in the immediate vicinity with expertise in construction law who, this Court feels, would not be unfamiliar entirely with ground-freezing, an hourly rate of $135.00 for special counsel appears more appropriate than the hourly rate charged.

 Special counsel represents that the nature of the litigation was quite complex and that the nature of the various claims and counterclaims further complicated this matter. Moreover, the Court does not doubt that substantial discovery was conducted by the parties involved. The Court further recognizes special counsel's ability

and his previous relationship with the debtor. Furthermore, we recognize that special counsel and his firm have put a number of hours into this case and have received no compensation since starting on the case in September 1983.

The Court also finds, however, that there is no evidence this case precluded other employment of special counsel's firm. There was no contingent fee arrangement or a fee quoted to the client, of which this Court is aware, which would be helpful in demonstrating the expectations of the attorney regarding his fee when he accepted the case. This case carries with it no particular taint which would have made it any more undesirable than a number of matters before this Court. Furthermore, there were no time limitations imposed by either the client or by the circumstances. In fact, we note the case was continued on two occasions.

The *Johnson* factor which is of the most concern to this Court, however, is relevant to the benefit received by the estate based on the services rendered by special counsel or, in other words, the results obtained. On November 28, 1984, this Court entered a consent order settling the Hannah litigation after proper notice was given and no objections filed.

As this Court recognized earlier, in exchange for a dismissal of debtor's claims, defendant dismissed its $1,000,000.00 counterclaim, the debtor received a potential $155,000.00 recoupment and the debtor received $10,000.00 in cash. The Court further recognizes that special counsel objected to such a settlement which was favored both by the debtor and by the Creditors' Committee. Special counsel described the counterclaim as being "defensible, but certainly not frivolous." But counsel admits the actual value of the benefits received under the settlement remain unknown.

There is no doubt but that special counsel has rendered services of benefit to the estate. Counsel has put a great deal of time and preparation into the Philadelphia litigation and has not received any compensation for over a year-and-a-half. Based

upon careful consideration of the *Johnson* factors as adopted by the Fourth Circuit and upon a consideration of the factors concerning the benefit received by the estate from special counsel's services, this Court determines that a proper fee in this matter is $75,000.00 plus reimbursement of out-of-pocket expenses in the amount of $1,489.21. This allowance will be in addition to the $10,770.01 already allowed on behalf of local counsel in this matter.

An appropriate Order will enter.