**In re INTERNATIONAL TECHNICAL PRODUCTS CORPORATION a/k/a ITP Export Corporation, Debtor(s).**

**Bankruptcy Nos. 79–01340–BKC–TCB, 84–01320–BKC–TCB.**

United States Bankruptcy Court, S.D. Florida.

Jan. 3, 1986.

See also 16 B.R. 328.

E. Susan Garsh, Bingham, Dana & Gould, Boston, Mass., Jerold I. Budney, Thomson, Zeder, Rohrer, et al. Miami, Fla., for 1st Nat'l Bank of Boston.

Eugene T. Herbert, Washington, D.C., special counsel for the estate.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for Pirelli Cable (not appearing in this matter).

B. Guerry Moore, Mechanicsville, Md., for M.S. Electronics and Summarit Electronics.

Martin L. Sandler, Miami, Fla, for Trustee, Daniel Bakst.

Daniel L. Bakst, Trustee. West Palm Beach, Fla.

## ORDER DENYING REHEARING AND OVERRULING OBJECTIONS TO APPLICATION FOR DISBURSEMENT OF FUNDS

THOMAS C. BRITTON, Bankruptcy Judge.

Two creditors with claims in the aggregate amount of $81,481 have objected (C.P. No. 266) to the trustee's application (C.P. No. 255) as amended (C.P. No. 259) to disburse the proceeds of a final award

made by the Iran-United States Claims Tribunal in favor of this debtor. On the premise that the funds had already been disbursed, these creditors also requested a rehearing of any disbursement order entered. These motions were heard on December 30.

No disbursement order has been entered and no disbursement has been made, therefore, the motion for rehearing is premature and is denied.

These two creditors, M.S. Electronics and Summarit Electronics Corp. are represented by their "attorney" B. Guerry Moore who did not appear at the hearing but elected to stand on his written submissions. Moore is from Maryland. At the hearing, I was advised that he is not now and has never been a member of the Maryland Bar. Although he at one time was a member of the District of Columbia Bar, his membership was suspended by that Bar on December 15, 1981. It would appear that his appearance in this case as an attorney is unauthorized. A copy of this order shall be directed to the District of Columbia Bar. It may be that Moore's conduct merits the attention of that agency; however, I have disregarded these circumstances in considering the objections raised by these two creditors.

Neither creditor has any objection to the payment of about $2.2 million to the First National Bank of Boston, a secured creditor whose lien validity and priority have previously been determined by this court. Disbursement of that sum will be authorized by a separate order. The focus of the objection is on the proposed disbursement of $1,543,408 to E.T. Herbert, Esq., as special counsel who successfully represented the estate before the Claims Tribunal in obtaining an award of $4,630,226. The proposed compensation is in accordance with Herbert's contingent fee agreement with the trustee, as revised in June, 1984. Herbert's employment and the agreement were approved by this court, however, neither the fee agreement nor this court's approval of that agreement precludes:

"compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments unanticipatable at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a).

■ The objectors protest first that they received no notice of Herbert's employment or the approval of his proposed contingent fee agreement. There is no requirement of either notice or hearing with respect to the employment of professional persons by a trustee. § 327(a). Notice was, however, given to all counsel who had appeared of record in this proceeding.

■ The objectors next contend that Herbert was disqualified to accept such employment and should, therefore, be denied any compensation on the ground that he had a conflicting interest, because he had previously served the debtor as its general counsel and, in that capacity, had opposed the claims of the debtor's creditors. If the allegations made in this regard are assumed to be true, these circumstances would not disqualify Herbert from this employment nor prevent his compensation. His sole function in this employment was to obtain the maximum permissible recovery for this debtor from a third party. If these objectors or any other person has any basis for relief from Herbert on account of his conduct in representing the debtor against its claimants, that claim is neither relevant nor resolved at this hearing.

■ Objectors next argue that the allowance of $1.5 million as a fee is grossly excessive in this instance because (a) almost all claims have been allowed by the Tribunal, (b) neither the time spent nor the results achieved merit such a large award, (c) the Tribunal allowed a fee of only $75,000 upon Herbert's application which showed that he had spent 2,500 hours, (d) his compensation should be surcharged on account of his failure to fully document the attorney fee claim made to the Tribunal, (e) the fee should not be computed on that part of the recovery which represents inter-

est, and (f) the contingency contract did not make appropriate allowance for the fact that Herbert's costs were advanced by a secured creditor. The objectors characterize this proposed fee as "an absolute outrage."

The record before me does not support any of these objections. To begin with, there have been 84 contested claims (as distinct from claims ultimately settled by the parties) heard by the Tribunal to date. Forty-four were decided for the claimant and forty against the claimant. There is no basis in fact to the suggestion that the presentation of this claim required no special skill and presented only minimal risks. The opposite has proved to be the case. This claim, in the original amount of $11 million, was hotly disputed with a $21 million counterclaim against the debtor.

The estimated time spent by Herbert during the year it took to prepare the claim and the four years before the Tribunal totals 4,000 hours, including 1,000 spent after the hearing before the Tribunal. The additional time was spent in preparing two post-hearing briefs on contentions which could have eliminated the claim entirely.

The Tribunal consists of an American, an Iranian, and a Swede. The Iranian has consistently opposed every fee award. The American in this instance recommended a fee of $300,000. The allowance of $75,000 was a compromise. None of the three judges was advised that the fee was contingent because the award is available to cover only actual legal expense as opposed to contingent fees.

Nor did the Tribunal know that before Herbert's preparation and presentation of this claim, the debtor's auditors had reported that this debtor's claim did not exceed its probable liability to Iran and, therefore, had no value whatsoever. Under the circumstances, I cannot attach significant weight to the fee award made by the Tribunal in this instance.

In recognition of the considerable contingency involved, the time spent and the very substantial result achieved, the approximate hourly charge represented by the one-third contingent fee in this case of $386 is not unreasonable. The fact that Herbert failed to fully document the fee application resulted from the circumstance that in order to do so he would have had to translate many hundreds of documents at an estimated cost of $20,000, an expense which could not be justified at that time. I do not find any basis to surcharge Herbert on account of anything he did or failed to do in this representation.

■ The contingent fee is appropriately measured against the total recovery received from the Tribunal, less only the charges deducted by the Tribunal, including the fee award and interest allowed, because this entire sum represents the benefit received by the estate and Herbert, like the estate, has had to await compensation until this moment. I find no merit in the argument that the contingent fee should be measured solely against the principal award and not against the interest allowed on the award.

Herbert's original contract called for a higher contingent fee. At that time, he was required to advance all necessary costs and expenses and in fact advanced at least $35,000 of his own money in preparing the claim and in its initial presentation. It was not until June, 1984 that the Boston bank agreed to and did subsequently advance almost $100,000 in expenses. It was in consideration of this commitment by the bank that Herbert agreed to reduce his contingent fee to one-third of the sum recovered. That agreement was approved by this court. I do not think that these circumstances justify any rejection at this time of the already reduced fee.

It goes without saying that an attorney's fee of $1.5 million paid to one lawyer for presenting one client's claim is a very large fee even in this day of fees that would have boggled the minds of an earlier generation of lawyers and judges. However, I am satisfied that Herbert was almost uniquely qualified for this employment. His prior experience with the debtor enabled him to reconstruct the claim after the debtor had

been put out of business. His previous legal experience in international law prepared him for the presentation of this claim. The fact that he had previously served in the State Department with American representatives on the Tribunal enabled him to anticipate the Tribunal's practice and procedure. His tenacity and skill are reflected in the award he recovered, the only asset recovered for the estate of this debtor.

I find this contract and this fee to be reasonable and see no basis to recede from its prior approval. The trustee is authorized and directed to pay special counsel $1,543,408.

Union Engineering, a creditor represented by a Yugoslavian attorney from Belgrade, filed on the day of the hearing an objection to the trustee's application for disbursement of funds. Counsel appeared at the hearing. It appears that Union may have a claim in the amount of about $124,000 for civil engineering work provided to the debtor as a subcontractor and that it may have obtained a judgment in Kuwait on December 1, 1984 for the amount of its claim. This claim was filed after the claims' bar date in this case. However, the trustee acknowledges that the creditor had received no notice of the bankruptcy and, therefore, the claims' bar date does not preclude this claim.

The creditor has opposed distribution on the ground that it is entitled to a priority of distribution ahead of both the secured creditor and the special counsel. I disagree. There is no basis for that conclusion under the Code. At best, this creditor holds a general unsecured claim. It appears probable that general creditors will receive an eventual distribution of approximately one-third of their claims.

I agree with the trustee that he should be given some opportunity to verify the claim. He has been instructed to do so promptly and to schedule any objection he may have to the claim before this court while counsel is visiting in this country.