**In re SOUTHERN MERCHANDISE DIS-
TRIBUTORS, INC., d/b/a Crown
Drug Sundry Company, Debtor.**

**Bankruptcy No. 85–03061–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida.

May 24, 1990.

Gui L.P. Govaert, Miami, Fla., trustee.

Steven Friedman, Miami, Fla., for trustee.

Robert Venny, Shutts & Bowen, P.A., Miami, Fla., for Foothill Capital Corp.

---

**ORDER ON OBJECTION TO APPLICA-
TION FOR FINAL COMPENSATION
BY ATTORNEY FOR TRUSTEE**

A. JAY CRISTOL, Bankruptcy Judge.

In this chapter 7 case, the assets of this estate have been fully administered, and all claims have been adjudicated. Gui L.P. Govaert, chapter 7 trustee and Steven Friedman, attorney for the trustee ("Applicant"), have both filed final fee applications. It is the fee request of the attorney for the trustee (C.P. No. 69) that is at issue.

The Applicant seeks total compensation in the amount of $35,000.00 for services which he has rendered on behalf of the bankruptcy trustee, and for the benefit of the creditors of this estate. As is the practice in this district, upon the filing of the final fee applications by the trustee and Applicant, the Clerk of Court issued a Notice of Filing of Final Account of Trustee and Applications for Compensation and Setting Deadline for Objections (C.P. No. 76). Within the time period provided, Foothill Capital Corporation ("Foothill"), a creditor, did file its Objection to Application for Final Compensation by Attorney for Trustee (C.P. No. 78). This objection to the fee request of the Applicant was heard on May 15, 1990.

A review of the record reflects that, of the $104,000.00 received by the Trustee, approximately $100,600.00 was recovered

as a result of the institution and litigation of six preference suits by the Applicant. The other assets of this case, consisting of a substantial inventory of drug and sundry goods and accounts receivable, valued on the debtor's schedules at in excess of $1.8 million, were abandoned by the trustee as being subject to a security interest held by Foothill, securing repayment of a debt due Foothill in excess of the value of the inventory and accounts receivable. Thus, the only substantial assets administered by the Trustee consist of the preference recoveries resulting from the six adversary proceedings instituted by the Applicant (a seventh adversary proceeding filed by the trustee was voluntarily dismissed).

The issue raised by Foothill's objection pertains to Applicant's request for an upward adjustment to the fee which Applicant would ordinarily and customarily request, based upon the amount of time expended by Applicant at his normal billing rate, otherwise known as the lodestar amount. Applicant contends, in his fee application, that the lodestar amount for services rendered on behalf of the trustee equals $26,687.00 for 230 hours of time expended. As indicated above, however, Applicant has requested total final compensation of $35,000.00, which represents an upward adjustment or increase of $8,313.00 over the lodestar amount. It is solely the $8,313.00 upward adjustment as to which Foothill takes issue. At the May 15th hearing on the objection to the Applicant's fee request, Foothill contended that total compensation for the lodestar amount ($26,687.00) was justified, but that an increase over the lodestar amount was not justified, as the results obtained by Applicant on behalf of the trustee were not "spectacular", and as an award of $35,-000.00 to the Applicant would consume almost 35 percent of the estate's proceeds, and would thus be excessive.

This Court, having carefully considered the record of this case and the related adversary proceedings litigated by the Applicant on the trustee's behalf, finds the final fee request of the Applicant to be reasonable and justified *sub judice*. In arriving at this conclusion, this Court places considerable reliance upon the factors delineated in the American Bar Association Model Code of Professional Responsibility. Disciplinary Rule 2–106(B) provides:

> A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
>
> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
>
> (3) The fee customarily charged in the locality for similar legal services.
>
> (4) The amount involved and the results obtained.
>
> (5) The time limitations imposed by the client or by the circumstances.
>
> (6) The nature and length of the professional relationship with the client.
>
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
>
> (8) Whether the fee is fixed or contingent.

These eight factors are consistent with judicially-established criteria for the assessment of the reasonableness of fee requests. *In re First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir.1977); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). This Court is duty bound to analyze each of the factors set forth above in assessing the propriety of Applicant's fee request.

## TIME AND LABOR REQUIRED, NOVELTY AND DIFFICULTY OF QUESTIONS INVOLVED, AND SKILL REQUISITE TO PERFORM LEGAL SERVICES PROPERLY

Applicant has incorporated detailed time records into his fee application, explicitly

delineating the nature and extent of services rendered on behalf of the trustee on a daily basis. No issue has been raised as to the propriety of the expenditure of time by Applicant as to services rendered on behalf of the trustee, and this Court is satisfied that Applicant is entitled to be compensated to the full extent of the 230 hours expended on behalf of the trustee. Although the issues addressed by Applicant, in administering the tangible assets of this estate, instituting preference suits, and adjudicating claims against this estate, were not particularly novel or difficult, the issues involved did require the services of an experienced and capable bankruptcy practitioner. In this regard, the Applicant performed professional services on behalf of the trustee quite ably, having maximized the aggregate amount of funds ultimately to be available for payment of creditors' claims.

## LIKELIHOOD THAT ACCEPTANCE OF EMPLOYMENT WILL PRECLUDE OTHER EMPLOYMENT OF APPLICANT

The Court is unaware of any information which would indicate that the Applicant was precluded from pursuing alternate employment as a result of his retention as attorney for the trustee in this case. However, to the extent that a significant portion of Applicant's billable time was attributable to services rendered on behalf of the trustee in this case, the Applicant obviously may have been precluded from undertaking other employment opportunities.

## FEE CUSTOMARILY CHARGED IN LOCALITY FOR SIMILAR LEGAL SERVICES

A final fee award in favor of Applicant of $35,000.00 affords Applicant an average hourly fee equal to $152.00. Of the total expenditure of time for services rendered on behalf of the trustee, approximately 115 hours was expended directly by Applicant, with an additional 115 hours expended by Applicant's associate attorneys. A further breakdown of the services rendered by Applicant and his associate attorneys, based upon a final fee award of $35,000.00, would provide Applicant with hourly compensation of approximately $175.00, and would provide hourly compensation for services rendered by Applicant's associates at $130.00. Although these hourly rates are in the upper range of hourly fees customarily charged for legal services in South Florida, such hourly rates clearly are not unreasonably high.

## AMOUNT INVOLVED AND RESULTS OBTAINED

Applicant has obtained an exceptional result on behalf of the creditors of this estate. Virtually the entire bankruptcy estate was generated as a result of the efforts undertaken by Applicant in instituting and prosecuting preference litigation. It is well-established that an important consideration in determining what are reasonable fees of an attorney in a bankruptcy proceeding is the benefit derived from his services by the entire body of creditors. *Guterman v. C.D. Parker & Co., Inc.*, 86 F.2d 546 (1st Cir.1936); *In re Universal Lubricating Systems, Inc.*, 165 F.2d 664 (3rd Cir.1948). In assisting the trustee in the administration of this chapter 7 estate, Applicant initiated his investigation and litigation of the potential preference suits with the trustee holding a balance of only $3,500.00 in his account to fund the litigation and to compensate the Applicant. Through Applicant's ability to analyze and evaluate the debtor's books and records, Applicant was able to document potentially voidable transfers made by the debtor in favor of seven different creditors. Of the six preference suits which the Applicant ultimately prosecuted, seeking an aggregate recovery of approximately $112,000.00, total proceeds of approximately $98,000.00 were recovered, representing an 87.5% rate of recovery. Considering the meager funds initially available to Applicant in order to fund the trustee's litigation, the results obtained are outstanding. The circumstances set forth by this dispute are not dissimilar from those addressed by Judge Britton in *International Technical Products Corporation*, 58 B.R. 33 (Bkrtcy —S.D.Fla.1986). Two creditors objected to

the fee request of special counsel to the bankruptcy trustee, who successfully represented the bankruptcy estate before the Iran–United States Claims Tribunal under a one-third contingency fee agreement, resulting in a recovery of $4.6 million for the bankruptcy estate. The objecting creditors asserted that a fee award of $1.5 million was grossly excessive in that neither the time expended nor the results achieved by special counsel merited such a large fee award. Judge Britton, in overruling the creditors' objection and allowing the fee request, stated:

> In recognition of the considerable contingency involved, the time spent and the very substantial result achieved, the approximate hourly charge represented by the one-third contingent fee in this case of $386.00 is not unreasonable. *Id.* at page 35.

Considering the excellent result achieved by the Applicant, the $35,000.00 fee request, which would compensate Applicant for time expended at the average hourly rate of $152.00, is fully justified and reasonable.

### TIME LIMITATIONS IMPOSED BY CLIENT OR BY CIRCUMSTANCES

The Court is unaware of any time constraints imposed upon Applicant which should affect the fee award to be granted in favor of Applicant. Although this case has been pending for a considerable period, the Court does not find, under the circumstances, that the delay in closing this estate warrants an adjustment to Applicant's fee request.

### NATURE AND LENGTH OF PROFESSIONAL RELATIONSHIP WITH CLIENT

Although Applicant has capably represented the trustee in numerous chapter 7 bankruptcy cases, this factor does not impact upon the reasonableness of Applicant's compensation request in this case.

### EXPERIENCE, REPUTATION, AND ABILITY OF APPLICANT

This Applicant has competently represented bankruptcy trustees as well as other parties in interest, on literally hundreds of occasions during the ten years that Applicant has practised in this Court. Furthermore, the Applicant is widely known throughout this community as a proficient bankruptcy practitioner, and enjoys a fine reputation.

### CONTINGENT NATURE OF COMPENSATION

As stated above, Applicant undertook the task of prosecuting the various preference suits available to the trustee with no assurance that his efforts would be successful, or even if successful, would result in a recovery to this estate from which Applicant could be compensated. If the preference suits had been unsuccessful, less than $4,000.00 would have been available for payment of the substantial expenditure of time incurred by the Applicant. It is well-established that a substantial contingency or risk factor undertaken by bankruptcy counsel in the representation of a debtor or trustee warrants commensurate compensation upon a successful conclusion as to such representation. As stated in *Delafield, Marsh & Hope v. Silbiger*, 228 F.2d 838, 841 (2nd. Cir.1956), "(w)e think that the recompense they received should reflect their success, particularly since, as appears, they would not have been entitled to claim anything from this particular estate had they been unsuccessful." The "contingency" factor weighed heavily in the decision rendered by the 9th Circuit Bankruptcy Appellate Panel to allow a fifty percent upward adjustment to the lodestar amount in the case of *Powerine Oil Company*, 71 B.R. 767 (9th Cir. BAP 1986). Counsel for the creditors' committee of a chapter 11 debtor sought payment of attorney's fees which included a fifty percent upward adjustment of the lodestar figure, based upon the excellent result obtained on behalf of the general unsecured creditors. The *Powerine* court recognized that the "results obtained" factor, in and of itself, would not provide a basis for a lodestar increase, deferring to the edict of the United States Supreme Court in *Blum v. Sten-*

*son,* 465 U.S. 886, 900, 104 S.Ct. 1541, 1550, 79 L.Ed.2d 891, 903 (1984) to the effect that the "results obtained" factor alone "normally should not provide an independent basis for increasing the fee award". However, the presence of this factor, combined with the "contingent fee" factor, did provide such a basis.

> ... common experience with the bankruptcy process demonstrates that it is generally attended by uncertainties and contingency. It therefore would be inappropriate to hold that the provisions of the foregoing section and rule as to employment on a contingent fee basis call for exclusion of a consideration of the contingency factor where counsel is employed on a non-contingent retainer basis. As the court in *Chalmers v. City of Los Angeles,* 796 F.2d 1205 (9th Cir.1986) stated:

>> Despite the confusion in the case law, it should be noted that contingency adjustments are not the same as a contingency fee arrangement. Contingent fee arrangements, like the one at issue in this case, are arrangements where an attorney's fee is based upon a percentage of the amount of recovery by his client. Contingency adjustments, which were not present in the case at bar, are a percentage increase over and above the amount obtained by multiplying hours expended by hourly rate; arrangements which call for contingency adjustments are specifically designed to reflect the risk that no fee may be obtained.... The risks of not prevailing or not recovering any fees appear to be bases or exceptional circumstances which may justify an upward adjustment in rare cases.

The bankruptcy appellate panel thus concluded that an upward adjustment to the creditors' committee fee request from an hourly rate of $215.00 to an hourly rate of $322.00 was justified by virtue of the contingent nature of the prospective fee to be paid said counsel, combined with the outstanding result obtained for the creditors. Similarly, this Court concludes that these same two factors warrant the allowance of the Applicant's request for an increase over his normal hourly billing rate. Indeed, the circumstances of this case are analogous to those addressed by Judge Ryan in the case of *In re Garfinkle,* 10 B.R. 987 (Bkrtcy—S.D.N.Y.1981). In this case, counsel for the bankruptcy trustee was successful through litigation in recovering approximately $440,000.00 for a bankruptcy estate which began with virtually no assets. The court, in allowing attorney's fees of $180,000.00, noted:

> The facts of this case require application of the salvage theory of compensation wherein the courts have long held, as a matter of public policy, that attorneys who create an estate which began with virtually nothing are entitled to "generous" compensation. *Id.* at page 991.

Based upon the foregoing analysis, this Court subscribes to the theory that, notwithstanding the various factors delineated in the A.B.A. Model Code of Professional Responsibility and addressed in the *First Colonial* and *Johnson* decisions, an upward adjustment to the hourly rate of counsel for a trustee or debtor may be warranted based upon an excellent result achieved by counsel combined with a substantial risk of nonpayment. Both of these factors were present when the Applicant herein commenced his representation of the trustee, and as a result of Applicant's efforts, a substantial estate has been created. A dividend, albeit modest, thus will be paid to general unsecured creditors.

Accordingly, Steven Friedman, as counsel for the trustee, is awarded final compensation of $35,000.00, together with reimbursement for expenses equal to $49.16. The distribution of Applicant's fee and expense award is addressed by separate Order Allowing Fees entered this date.

DONE and ORDERED.