**In the Matter of ENVIRONMENTAL WASTE CONTROL, Debtor.**

**Bankruptcy No. 89–30581 HCD.**

United States Bankruptcy Court, N.D. Indiana, South Bend Division.

Dec. 7, 1990.

Pendygraft, Plews, & Shadley, Henry Efroymson, Indianapolis, Ind., for debtor.

James Matthews, South Bend, Ind., for Resources Unlimited, Inc.

Michael Schaefer, Indianapolis, Ind., for IDEM.

Robert Oakley, U.S. Dept. of Justice, Washington, D.C., for E.P.A.

John Hamilton, South Bend, Ind., for STOP.

Alex Edgar, South Bend, Ind., U.S. Trustee.

## MEMORANDUM OF DECISION

HARRY C. DEES, Jr., Bankruptcy Judge.

This matter comes before the court on the APPLICATION BY SPECIAL COUNSEL FOR DEBTOR, PENDYGRAFT PLEWS & SHADLEY, FOR ALLOWANCE OF INTERIM COMPENSATION AND REIMBURSEMENT OF COSTS ADVANCED TO DATE. A hearing was held on October 29, 1990, after which the matter was taken under advisement. It is now ready for decision.

## JURISDICTION

Pursuant to 28 U.S.C. § 157(a) this case has been referred to this court for hearing and determination. After reviewing the record, the court determines that the matter before the court is a core proceeding within the meaning of § 157(b)(2)(A). This entry shall serve as findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52 made applicable to bankruptcy proceedings by Bankruptcy Rule 9014.

## STATEMENT OF THE FACTS

Environmental Waste Control, Inc. ("EWC") filed its voluntary petition under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) on April 10, 1989. EWC operates a hazardous waste landfill in Fulton County, Indiana. The bankruptcy filing closely followed a judgment entered against EWC in the United States District Court for the Northern District of Indiana. The District Court, in a two-hundred page opinion, permanently closed the landfill, assessed heavy civil penalties against EWC, and ordered a clean-up of the site.[1]

Pendygraft, Plews & Shadley[2] ("PP & S") had been environmental counsel for EWC prior to its filing a petition in bankruptcy and had represented it before the District Court. As such, on April 21, 1990, EWC requested that PP & S be appointed special environmental counsel to pursue an appeal of the District Court's opinion to the United States Court of Appeals for the Seventh Circuit and to pursue several other litigation matters in which EWC was involved. The bankruptcy court approved the employment of PP & S on July 24, 1989.[3]

On May 16, 1990, PP & S applied for allowance of interim fees and expenses. For services rendered and expenses incurred during the period of time from the date of filing through March 31, 1990, PP & S requested $727,286.25[4] and $49,714.89, respectively. Objections were filed by Resources Unlimited, Inc., Supporters To Oppose Pollution, Inc. ("STOP"), the Environmental Protection Agency and the U.S. Trustee. One of the main objections voiced by several creditors, including the U.S. Trustee, was the lack of specificity of the entries in the fee application. In response to that objection, PP & S filed a supplemental application for fees on October 9, 1990. STOP filed a response to the supplemental application on October 19, 1990. On October 29, 1990 the court held a hearing on the supplemental application and objections. Besides hearing testimony from Mr. George Pendygraft, the court also heard arguments with regard to the objections filed. Among these objections were that PP & S had an impermissible conflict of interest, that PP & S should not have used the pre-petition retainer without first seeking permission from the court, that the fees should be cut for lack of benefit to the estate if the appeal to the Seventh Circuit were not successful, and that PP & S

---

1. *United States v. Environmental Waste Control, Inc.,* 710 F.Supp 1172 (N.D.Ind.1989).

2. Pendygraft, Plews & Shadley were formerly known as Pendygraft & Plews.

3. Environmental Waste Control, Inc., No. 89–30581 (Bankr.N.D.Ind. July 24, 1989).

4. PP & S had received $350,000.00 pre-petition, so the actual amount of "new money" requested was $377,286.25.

should not receive any fees for work done on the Rule 11 sanctions that had been filed against PP & S by STOP in the District Court. The U.S. Trustee recommended that PP & S be awarded $450,000.00, not the $727,286.25 requested, for, among other things, "overlawyering".

The court, after hearing the testimony and considering the arguments, finds that PP & S is entitled to $618,816.51 in fees and $36,904.70 in expenses.

## DISCUSSION

The court may award interim compensation pursuant to 11 U.S.C. § 331. That section allows a professional person to apply every 120 days for compensation for services rendered and expenses incurred. Section 331 refers to 11 U.S.C. § 330 for the standards for the amount of compensation that may be awarded. Section 330 states in pertinent part:

(a) ... the court may award ... to a professional person employed under section 327 or 1103 of this title, ...

(1) reasonable compensation for actual, necessary services rendered by such ... professional person ... and by any paraprofessional persons employed by such ... professional person ... based on the nature, the extent and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

11 U.S.C. § 331 (1988). Pursuant to § 331, the court may only award fees that are "reasonable". Moreover, "this Court has the authority and duty to inquire independently into fees of professionals in bankruptcy matters even where no objections are filed...." *In re Wyslak,* 94 B.R. 540, 541 (Bankr.N.D.Ill.1988). *Accord In re Kreidle,* 85 B.R. 573 (Bankr.D.Col.1988); *In re IDAK Corp.,* 26 B.R. 793 (Bankr.D. Mass.1982); *In re Crutcher Transfer Line, Inc.,* 20 B.R. 705 (Bankr.W.D.Ky.1982). "The review of attorney's fees and expenses is within the discretion of the court...." *In re Smith,* 48 B.R. 375, 378

(Bankr.C.D.Ill.1984). *Accord Howell Petroleum Corp v. Berkowitz, Lefkovits & Patrick (In re Warrior Drilling & Engineering Co.),* 18 B.R. 684 (N.D.Ala.1981). " '[I]n assessing the value of an attorney's services, a court is itself an expert on the question and may make its judgment as to the amount to be awarded from its own knowledge and experience....' *Lindy Bros. Builders, [Inc.] v. American Radiator & Standard Sanitary Corp.,* 341 F.Supp. 1077, 1083 (E.D.Pa.1972) [vacated, 487 F.2d 161 (3rd Cir.1973) ]." *Bowe v. Colgate–Palmolive Co.,* 443 F.Supp. 696, 716 (S.D.Ind.1977).

The court uses the lodestar method to determine the appropriate amount of fees. "Using this method, the Court appraises the number of hours reasonably expended and multiplies such hours by reasonable hourly rates to derive a base which may be adjusted upward or downward depending on other factors." *In re Wabash Valley Power Assn., Inc.,* 69 B.R. 471, 477 (Bankr.S.D.Ind.1987) (cite omitted). *Accord In re Southern Industrial Banking Corp.,* 41 B.R. 606 (Bankr.E.D.Tenn.1984). The factors most often referred to in adjusting the lodestar figure up or down are the *Johnson* factors. These are:

1. the time and labor devoted to the matter,

2. the difficulty and/or complexity of the matter,

3. whether the fee is fixed or contingent,

4. the amount involved in the matter,

5. the results obtained, and

6. awards in similar cases.

*Blackburn–Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.),* 794 F.2d 1051, 1058 (5th Cir.1986). *See also Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–719 (5th Cir. 1974). These factors are not exclusive, however, and others may be used to adjust the lodestar figure.

The key word in the statute used to calculate the lodestar figure and the ultimate fee award is "reasonable". Both the hourly rate and the number of hours expended must be reasonable. The court ac-

knowledges that it is important that attorneys who participate in a bankruptcy case must be compensated at rates which are comparable to those earned by attorneys not practicing bankruptcy in order to ensure quality representation before the bankruptcy court. However, the court will not accept the argument that the pursuit of quality representation preempts the language of the Bankruptcy Code itself which requires that only "reasonable compensation for *actual, necessary* services" be awarded. 11 U.S.C. § 331 (emphasis added). Therefore, the court has carefully reviewed the fee application in order to ensure that the requirements of the Code have been met.

Before discussing the specifics of the PP & S fee application and the reasonableness of the hours and rates, the court will dispense with several objections raised by creditors. These objections relate to an alleged conflict of interest, to a pre-petition retainer received by PP & S, to the results obtained thus far by PP & S, and to the Rule 11 sanctions.

■ Since early in these bankruptcy proceedings, STOP has alleged that PP & S has a conflict of interest with a creditor of EWC, who may also be a potentially responsible person under CERCLA.[5] However, PP & S revealed to the court at the outset that it had formerly represented this creditor and that it could not do anything adverse to its former client. Because this conflict was revealed to the court before the court approved it as special counsel, the conflict does not provide a basis for disallowing part or all of the fees.

■ Another objection raised was with regard to a retainer received by PP & S pre-petition. The objection was raised because PP & S had used the retainer without first requesting permission from this court to do so. However, since the retainer was received by PP & S prior to EWC

filing a petition in bankruptcy, the money did not become part of the bankruptcy estate. Therefore, PP & S was free to use it, subject, of course, to possible disgorgement if the fees were not earned.

■ An objection was also raised with regard to the results obtained by PP & S, *i.e.* did its services benefit the estate. "It is well-established that an important consideration in determining what are reasonable fees of an attorney in a bankruptcy proceeding is the benefit derived from his services by the entire body of creditors." *In re Southern Merchandise Distributors, Inc.*, 117 B.R. 725, 727 (Bankr.S.D.Fla. 1990). It is true that the estate has yet to see any benefit from the work of PP & S. In fact, the Seventh Circuit recently handed down its decision upholding the District Court in all respects.[6] Although it is within the discretion of the court to disallow a portion of the fees for lack of benefit to the estate, the court declines to exercise that discretion at this time. The court will continue to monitor whether the estate does benefit because "the amount of fees sought must be reasonable in light of what was accomplished." *In re Roger J. Au & Son, Inc.*, 114 B.R. 482, 488 (Bankr.N.D. Ohio 1990).

STOP has also objected to the granting of fees for PP & S's defense of a motion for Rule 11 sanctions as the motion was against PP & S itself and not EWC. This court suspects, as PP & S has argued, that this is a trial tactic used by STOP. However, if the District Court were to award sanctions against PP & S, this court may require PP & S to disgorge those fees awarded it for work done on the Rule 11 sanctions.

Although this court did not disallow any amounts based on the above objections, the court is not granting PP & S's fee request in full. Adjustments were made in the hourly rate and the number of hours requested. A few other adjustments were

---

**5.** CERCLA, the Comprehensive Environmental Response, Compensation, and Liability Act, is found at 42 U.S.C. § 9601 *et seq.* A potentially responsible person is the term used for those persons who may be liable under CERCLA under 42 U.S.C. § 9607.

**6.** *United States Environmental Protection Agency v. Environmental Waste Control, Inc.*, 917 F.2d 327 (7th Cir.1990).

made based on other factors that will be discussed below.

■ The first part of the lodestar calculation is the hourly rate. The court finds generally that the hourly rates sought by PP & S are appropriate for the attorneys and paralegals in PP & S, given their levels of experience and expertise. However, an adjustment was made in the hourly rate for travel time and clerical work. With regard to travel time, this court agrees with some other bankruptcy courts in holding that while travel time is necessary, it is unproductive. Therefore, to charge at the full rate for travel time would be burdensome to the estate. *See In re Microwave Products of America, Inc.,* 104 B.R. 900 (Bankr. W.D.Tenn.1989) and *In re Geofreeze Corp.,* 50 B.R. 200 (Bankr.E.D.Va.1985). This court will allow travel time to be charged at half the normal hourly rate.[7] The amount disallowed after halving the rates for travel time is $10,240.45.

■ The court is also cutting rates for clerical work performed by attorneys and paralegals. This court is not alone so doing; and, in fact, most courts disallow any fees for clerical tasks. *See In re Holthoff,* 55 B.R. 36 (Bankr.E.D.Ark.1985); *In re Churchfield Management & Inv. Corp.,* 98 B.R. 838 (Bankr.N.D.Ill.1989); and *Wabash Valley Power, supra.* The court in *In re Lucky Foods, Inc.,* No. 1, 76 B.R. 664, 671 (Bankr.E.D.Ark.1986) pointed out that the use of paralegals is being abused since the purpose of using a paralegal is to provide some legal work at cheaper rates, but they are being used to do secretarial and clerical work. This was evident in this fee application. Hours and hours were spent organizing files, making copies, delivering papers, *etc.* These activities are clerical in nature and normally should not be charged by an hourly rate, but rather be part of overhead. Nonetheless, the court is willing to allow $30.00 per hour for the services charged which were clerical in nature here. How- ever, the court cannot tolerate an abuse of paralegal billing for clerical work which is properly part of overhead. This sort of billing practice can be likened to the plight of the restaurant customer who, upon finishing her meal, receives not only a bill for the food but also for her share of the rent, lights, and heat. In the future, if something appears clerical, but is done by a paralegal, an explanation should be given as to why it is so, or it will be disallowed by this court. The total amount disallowed after cutting clerical tasks back to $30.00 per hour is $19,780.50.

■ The next area of concern is inter-office conference time. No consensus among courts exists as to whether inter-office conferencing should be allowed in its entirety, disallowed in its entirety, or somewhere in between. Most courts agree, however, that it is subject to abuse.

> Generally, attorneys should work independently, without the incessant 'conferring' that so often forms a major part of many fee petitions. While some intraoffice conferences may be necessary, no more than one attorney may charge for it unless an explanation of each attorney's participation is given.

*In re Pettibone Corp.,* 74 B.R. 293, 303 (Bankr.N.D.Ill.1987). *Accord In re B & W Management, Inc.,* 63 B.R. 395 (Bankr.D. D.C.1986). *See also In re American Int'l Airways, Inc.* 47 B.R. 716 (Bankr.E.D.Pa. 1985). This court agrees with the court in *Pettibone* that, absent an explanation, only one attorney may charge for the conference. This court has allowed the top billing attorney's rate for each conference, while any other attorney or paralegal's fees for each conference have been disallowed. Furthermore, this fee application revealed a tremendous amount of conferencing between two, three, sometimes four attorneys or paralegals. The court did not make any additional deductions in this area as this is a large and complex case and the court recognizes a need for communication

---

7. PP & S included entries that lumped travel together with other activities. In many of these instances the court took half of the total time recorded. It is not the court's job to decipher time entries and guess how much time each activity took. It is the responsibility of the applicant to make separate time entries for each activity. The court will not do it for the applicant.

between and among the attorneys. However, the court will not tolerate abuses of intra-office conferencing. The total amount of conferencing disallowed is $30,-623.50.

■ Besides the disallowances or fee reduction for the general areas outlined above, some specific deductions have been made because the court finds that either the services were not reasonable and necessary or that the amount of time spent on a particular item was not reasonable. The first of such deductions is for "travel time". The travel time referred to here, calculated separately from that calculated above, is for travel that was not necessary. The most egregious examples of this is the trips to South Bend to file papers. Either the United States mail or a messenger service would have been less expensive than having someone whose billing rate is $75.00 per hour drive from Indianapolis to South Bend. Not having any explanation as to why it was necessary that these services be performed by an attorney/paralegal, the court finds that they were unnecessary and disallows them in their entirety. The total amount disallowed is $7,749.00.

■ The court also finds that the amount of time spent on both researching the appeals process and reviewing and revising the brief to the Seventh Circuit Court of Appeals was unreasonable. PP & S spent 50.7 hours researching the "appeals process". The research itself may have been necessary, but the amount of time spent was unreasonable. The court finds that half the amount of time billed should have been sufficient and therefore disallows $3,219.50.

■ PP & S also spent an unreasonable amount of time reviewing and revising the appellate brief. A total of 107.8 hours were spent reviewing and revising the appellate brief. The court has considered in this calculation only those hours which have specifically been designated as such. Many more hours were spent in the drafting process by multiple attorneys. While the importance of a good appellate brief is axiomatic, 107.8 hours simply reviewing and revising are unnecessary. The court

finds that 73.5 hours should have been more than sufficient to review and revise the appellate brief and therefore disallows $4,287.50. Therefore, the final lodestar figure is $651.385.80.

■ After the lodestar figure has been calculated, it may be adjusted up or down for other factors. The court has considered the *Johnson* factors, outlined above, and finds that no adjustment needs to be made to the lodestar figure. There are, however, two other factors which require that the lodestar figure be adjusted downward. These are "overlawyering" and unspecific entries. Besides the two items above where the court specifically cut hours for unnecessary time spent, there are many other examples throughout the fee application. For instance, at one hearing, four attorneys/paralegals were present with no explanation as to why each was needed. Several times two attorneys would travel to South Bend, spending 2.5 to 3.0 hours in the car and then have a conference together for another half hour or so. In fact, once two attorneys had a conference which lasted 3.0 hours in addition to the 3.0 hours in the car. Three attorneys attended the oral argument before the Seventh Circuit in Chicago; all three billed for travel time and time attending the oral argument when only one person actually participated. There were several instances where the amount of research time for the issue indicated was high. These are only a few examples of what the court can only describe as "over-lawyering".

The other factor which requires a deduction is vague and unspecific entries. Several entries were made which simply said "research". Another said "attention to file". It is impossible for the court to review the propriety of the amount of time spent when the court does not know what an attorney is doing or for what purpose he or she is doing it. Entries need to be specific and identify what is being done, and what it concerns, or it will be reduced or denied. *See Holthoff,* 55 B.R. 36, at 40. Furthermore, work performed should not be lumped into one time entry. Again, the court cannot adequately review the entry if

it cannot tell how much time was spent on each item.

Because of "overlawyering" and unspecific entries, the court finds that a downward adjustment of 5% to the final lodestar figure is warranted. That amount is $32,569.29. Therefore, the court approves PP & S's application for fees in the amount of $618,816.51.

■ The court now turns to PP & S's request for expenses. Section 330 of the Bankruptcy Code allows the Court to award expenses to professional persons. Courts have recognized two types of expenses, "overhead" and "out-of-pocket". Of these only "out-of-pocket" expenses are compensable. "Overhead expenses are those day-to-day operating costs which are incurred regardless of whom the law firm represents.... Out of pocket expenses are those expenses which can clearly be traced and allocated to a particular client." *In re Island Helicopter Corp.*, 53 B.R. 71, 72–73 (Bankr.E.D.N.Y.1985) (cite omitted). An award of expenses should not be windfall to the law firm, but should only reimburse it for money actually spent. Expenses must be reasonable and necessary.

■ Because it is the duty of the court to assess whether the expenses requested are reasonable and necessary, the application must be explicit with regard to the expenses. It must set out when the expense was incurred, not only when the firm reimbursed an attorney; it must explain the purpose for the expense; it must say who incurred the expense. Although PP & S did not do that this time, the court has not disallowed any fees. However, any future request for fees must set out each expense with particularity.

■ There are two expenses on this application that the court finds to be unreasonable. The first is photocopying. PP & S has requested 20 cents per copy. This is excessive and a windfall to PP & S. The court will allow 10 cents per copy. PP & S did say in its application that the reason for the rate was because some special copying had to be done, for instance, for maps. Had PP & S set those copying costs out

separately, the court could allow reimbursement to PP & S for them. However, the court has no idea how much special copying was done or how much it cost. Therefore, the court finds that 10 cents per copy is reasonable and awards PP & S half the amount they originally requested: $11,056.78.

■ The court also finds that the amount of Federal Express charges is excessive. While Federal Express may be a necessity at times, it should be used sparingly. Deadlines should be anticipated so that filings and other papers can be sent through regular mail. Therefore, the court will disallow half of the amount requested for Federal Express. The amount awarded is $1,091.88. The total amount of expenses allowed is $36,904.70.

## CONCLUSION

It is the duty of the court to ensure that the fees awarded meet the requirements of 11 U.S.C. § 330. The fees and expenses requested must be reasonable. When either the hourly rate, the number of hours worked, or the expenses requested are not reasonable, the court will, as it did here, disallow the unreasonable portion. Therefore, the court finds that the reasonable amount of attorney fees to be awarded is $618,816.51 and the reasonable amount of expenses to be reimbursed is $36,904.70.

SO ORDERED.